S. S. W., Inc. v. AIR TRANSPORT ASS'N
OF AMERICA et al.

No. 10731.

United States Court of Appeals
District of Columbia Circuit.

Decided July 12, 1951.

Warren E. Miller and Harold L. Schilz, Washington, D. C., with whom John F. Clagett and John James Klak, Washington, D. C., were on the brief, for appellant.

Howard C. Westwood and Hubert A. Schneider, Washington, D. C., for appellees.

Jo V. Morgan, Jr., and Stuart G. Tipton, Washington, D. C., were on the brief for appellees Air Transport Ass'n of America and Air Traffic Conference of America.

Howard C. Westwood and Ernest W. Jennes, Washington, D. C., were on the brief for appellee American Airlines, Inc.

Roger J. Whiteford, Hubert A. Schneider and Jo V. Morgan, Jr., Washington, D. C., were on the brief for appellee Braniff Airlines, Inc.

James M. Landis, Washington, D. C., was on the brief for appellee Colonial Airlines, Inc.

Stanley Gewirtz, Washington, D. C., also entered an appearance for appellee Colonial Airlines, Inc.

W. Glen Harlan, Atlanta, Ga., was on the brief for appellee Eastern Air Lines, Inc.

Robert B. Hankins and Macon M. Arthur, Washington, D. C., were on the brief for appellee Capital Airlines, Inc.

C. Edward Leasure, Washington, D. C., was on the brief for appellees Continental Air Lines, Inc., and Northwest Airlines, Inc.

Henry J. Friendly, New York City, and James G. Johnson, Jr., Washington, D. C., were on the brief for appellee Pan American Airways, Inc.

William Caverly, Washington, D. C., was on the brief for appellee Trans World Airlines, Inc.

James Francis Reilly, Washington, D. C., and Leo F. Tierney, Chicago, Ill., were on the brief for appellee United Air Lines, Inc.

Warren E. Miller, Washington, D. C., for intervenors Air Transport Associates, Inc., and Golden North Airways, Inc.

Before CLARK, PROCTOR and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

Appellant, an "irregular" or "non-scheduled" interstate air carrier, brought suit under the antitrust laws against appellees, who are regularly certificated air carriers, and their trade association. Alleging that appellees have combined and conspired to restrain and to monopolize the air-borne commerce of the United States by suppressing competition therein and by controlling the channels through which prices, terms and conditions thereof are determined, appellant asked for injunctive relief and for treble damages. The specific acts and the course of conduct by which appellees are said to be pursuing their objective are described in paragraph 22 of the complaint. That paragraph accuses appellees of conspiring to:

"(a) Solicit, persuade, induce, and coerce ticket agencies and travel bureaus from acting as agents for plaintiff and other irregular air carriers and 'nonskeds' and from making sales and distribution of tickets, charters and contracts on their behalf;

"(b) Influence administrative agencies to impose rules, regulations and inspections favorable to the certificated air carriers and burdensome to the 'nonskeds', and obtain subsidy and other preferences denied the 'nonskeds';

"(c) Discredit and disparage the plaintiff and other 'nonskeds', or irregular air carriers, and destroy public confidence in them by means of false and misleading advertisements and news releases and stories;

"(d) Eliminate and prevent competition for air carrier passenger and freight transportation;

"(e) Offer transportation at cut prices until competition was eliminated, and then to compensate themselves by reimbursement from other operations or by increasing or enhancing prices after competition is eliminated;

"(f) Utilize their domination and control over the air-borne commerce of the nation to encourage and promote consolidations, mergers, expansion and debt refundings in order to completely dominate the field and eliminate 'nonskeds' and irregular air carriers;

"(g) Use such dominant control to obtain huge quantity discounts from major gasoline and oil suppliers not available to the plaintiff and other comparable 'nonskeds';

"(h) Cause refusal and delay of vital maintenance and other services at airports to the plaintiff and other 'nonskeds.'"

The District Court denied relief on the ground that the complaint raised matters which "the Civil Aeronautics Act [49 U.S.C.A. § 401 et seq.] was passed to correct" and which fall, therefore, within the primary jurisdiction of the Civil Aeronautics Board. Appellant contends, as it did in the trial court, that the Board has no authority to enjoin the broad conspiracy alleged to exist or to award damages attributable to that unlawful conspiracy.

Here, as in Pennsylvania Water & Power Co. v. Federal Power Commission,[1] we are called upon to consider the

effect of the antitrust laws upon a regulated industry. The problem is "one of the interrelation of two statutory schemes—each of which reflects different historical pressures and different conceptions of the public interest. The Sherman Act [15 U.S.C. A. §§ 1–7, 15 note] and related laws represent an attempt to keep the channels of competition free so that prices and services are determined by the workings of a free market."[2] Regulation of a specific industry, on the other hand, "evidences congressional recognition that competition can assure protection of the public interest only in an industrial setting which is conducive to a free market and can have no place in industries which are monopolies because of public grant, the exigencies of nature, or legislative preference for a particular way of doing business." The aircraft industry, like railroads and power, is one in which Congress has decided that the public interest is best served, not by free competition, but rather by direct and uniform regulation by an "agency authorized to supervise almost every phase of the regulated company's business."[3]

It is apparent that "the antitrust laws can have only limited application to industries regulated by specific statute."[4] But, in view of the importance of the antitrust laws to the unregulated part of the economy, the rule has been developed that the mere existence of a regulatory statute does not result in complete withdrawal of the regulated industry from the operation of the antitrust laws. Such repeals by implication are not favored. The antitrust laws have been held to be superseded by specific regulatory statutes *only* to the extent of the repugnancy between them.[5] In U. S. Navigation Co. v. Cunard S. S. Co.,

1932, 284 U.S. 474, 485, 52 S.Ct. 247, 250, 76 L.Ed. 408, the case relied upon by the District Court in its dismissal of the complaint, Mr. Justice Sutherland applied that rule to an antitrust suit brought against a company subject to the Shipping Act, 46 U.S.C.A. § 801 et seq.: "A comparison of the enumeration of wrongs charged in the bill with the provisions of the sections of the Shipping Act * * * conclusively shows, without going into detail, that the allegations either constitute direct and basic charges of violations of these provisions or are so interrelated with such charges as to be, in effect, a component part of them; and the remedy is that afforded by the Shipping Act, *which to that extent supersedes the anti-trust laws.*"[6] Similarly, a rate which is the product of a conspiracy under the antitrust laws may nevertheless be a legal rate because the governing criterion is a regulatory statute.[7] If, however, the regulatory agency has not been authorized to deal with the subject matter of the complaint, as was the case with the Interstate Commerce Commission and broad rate fixing combinations, the courts retain jurisdiction under the antitrust laws to grant relief.[8] Thus, in each case brought against a regulated company under the antitrust laws, the subject matter and remedy afforded by the regulatory statute are compared with that of the antitrust laws. If the latter either cover subject matter outside the scope of the Commission's power or provide a remedy which the Commission may not give, then they remain in effect to that limited extent. This sort of approach gives the greatest possible effect to congressional intent. It subjects problems intended to be dealt with in a uniform manner within the framework

2. Id. at p. 4.

3. Ibid.

4. Ibid.

5. Section 1107(k) of the Civil Aeronautics Act, 49 U.S.C.A. § 677, is to the same effect. It provides: "All other Acts or parts of Acts inconsistent with any provision of this Act are hereby repealed."

6. Emphasis supplied. See Terminal Warehouse v. Pennsylvania R. Co., 1936, 297 U.S. 500, 513–514, 56 S.Ct. 546, 80 L. Ed. 827.

7. Keogh v. Chicago & N. W. Ry. Co., 1922, 260 U.S. 156, 162, 43 S.Ct. 47, 67 L.Ed. 183.

8. Georgia v. Pennsylvania R. Co., 1945, 324 U.S. 439, 455 et seq., 65 S.Ct. 716, 89 L.Ed. 1051. Cf. United States v. Borden, 1939, 308 U.S. 188, 198–201, 60 S.Ct. 182, 84 L.Ed. 181.

of a particular industry to the agency empowered to regulate that industry. At the same time, it gives effect to the anti-trust laws in those areas not carved out from them by more specific economic regulation.

Examination of the Civil Aeronautics Act discloses that it provides for detailed and comprehensive economic regulation by the Board of air carriers subject to its jurisdiction. In addition to the customary control over entry into the field, through issuance of certificates of public convenience and necessity,[9] and supervision of rates and services,[10] the Board is given authority over mail rates[11] and loans and financial aid from United States agencies generally.[12] So far as competitive practices are concerned, the Board is authorized (1) to initiate or hear complaints of "unfair or deceptive practices or unfair methods of competition in air transportation" and to issue cease and desist orders against such practices or methods of competition;[13] (2) to approve—and thereby to exempt from the antitrust laws[14]—or disapprove mergers, consolidations and acquisitions of control,[15] whether direct or indirect,[16] as well as pooling and other agreements.[17] The provision dealing with pooling and other agreements indicates the comprehensive sweep of the Act in its relationship to the antitrust laws. It provides that "Every air carrier shall file with the Board a true copy, or, if oral, a true and complete memorandum, of *every contract or agreement* (whether enforceable by provisions for liquidated damages, penalties, bonds, or other-

wise) affecting air transportation and in force on the effective date of this section or hereafter entered into, or any modification or cancelation thereof, between such air carrier and any other air carrier, foreign air carrier, or other carrier *for pooling or apportioning earnings, losses, traffic, service, or equipment, or relating to the establishment of transportation rates, fares, charges, or classifications, or for preserving and improving safety, economy, and efficiency of operation, or for controlling, regulating, preventing, or otherwise eliminating destructive, oppressive, or wasteful competition, or for regulating stops, schedules, and character of service, or for other cooperative working arrangements.*"[18]

Comparison of these provisions of the Civil Aeronautics Act with the allegations of the complaint reveals that that Act "covers the dominant facts alleged in the present case as constituting a violation of the Anti-Trust Act".[19] As a result, appellant must first seek relief from the Board. The principles underlying the doctrine of exhaustion of administrative remedies as well as the antitrust regulated industry problem point to the importance of giving the Board the first opportunity to determine the extent of its jurisdiction and to deal with matters falling within its reach.[20] The Board may grant him all the *prospective* relief sought by him, since it, unlike the Interstate Commerce Commission,[21] is empowered to issue cease and desist orders against unfair methods of competition and deceptive practices and to entertain any complaint[22] and issue any orders necessary

---

9. 49 U.S.C.A. § 481.

10. Id., § 484.

11. Id., § 486.

12. Id., § 490.

13. Id., § 491.

14. Id., § 494.

15. Id., § 488. See also id. § 489.

16. Id., § 493.

17. Id., § 492.

18. Id., § 492(a). Emphasis supplied.

19. U. S. Navigation Co. v. Cunard S. S. Co., 284 U.S. at page 483, 52 S.Ct. at page 250, 76 L.Ed. 408.

20. This primary jurisdiction rule arose under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., which contained a saving clause similar to that found in 49 U.S.C.A. § 676. See Mitchell Coal Co. v. Pennsylvania R. Co., 1913, 230 U.S. 247, 256, 33 S.Ct. 916, 57 L.Ed. 1472; U. S. Navigation Co. v. Cunard S. S. Co., 284 U.S. at pages 485–486, 52 S.Ct. at pages 250, 251.

21. Georgia v. Pennsylvania R. Co., 324 U. S. at page 456, 65 S.Ct. at page 725, 89 L.Ed. 105.

22. 49 U.S.C.A. § 642.

to carry out its power to approve or disapprove contracts and agreements among air carriers. Nor does the fact that Board approval of the agreements and understandings charged in the complaint has not yet been obtained alter our conclusion. As the Supreme Court said in U. S. Navigation Co. v. Cunard S. S. Co., "* * * it reasonably cannot be thought that Congress intended to strip the Board of its primary original jurisdiction to consider such an agreement and 'disapprove, cancel, or modify' it, because of a failure of the contracting parties to file it as section 15 requires. A contention to that effect is clearly out of harmony with the fundamental purposes of the [Shipping] act, and specifically with the provision of section 22 authorizing the Board to investigate *any* violation of the act upon complaint or upon its own motion and make such order as it deems proper. And whatever may be the form of the agreement, and whether it be lawful or unlawful upon its face, Congress undoubtedly intended that the Board should possess the authority primarily to hear and adjudge the matter. For the courts to take jurisdiction in advance of such hearing and determination would be to usurp that authority. Moreover, having regard to the peculiar nature of ocean [here air] traffic, it is not impossible that, although an agreement be apparently bad on its face, it properly might, upon a full consideration of all the attending circumstances, be approved or allowed to stand with modifications." [23] This is especially true here since the Board has construed "contract or agreement" within the meaning of 49 U.S.C.A. § 492 as "intended, like the word 'contract' in section 1 of the Sherman Act, to include all understandings which are, or may become, the basis of concerted action." [24]

The Board may, of course, ultimately determine that it lacks jurisdiction over certain phases of the complaint. In that event, there will be no conflict of authority between antitrust laws and specific statute and jurisdiction will remain in the District Court to deal with such matters. But, as we have indicated, that cannot be known until the Board has had an opportunity to act on these allegations. Until it has done so, injunctive relief in the District Court is unavailable. And, to the extent that various practices, agreements, methods of competition, etc., are determined by the Board to be authorized or permissible under the Civil Aeronautics Act, no injunctive relief under the antitrust laws will be available at any time. The antitrust laws would to that extent be superseded by the regulatory statute. Otherwise, we might have the spectable of courts throughout the country enjoining practices as violations of the antitrust laws even though the agency specifically authorized to deal with them has determined or may decide, subject to judicial review, that such practices serve the interests of the national air transportation policy.[25] "The unity of the system of regulation * * * [might break] down beyond repair." [26]

The prayer for treble damages under the antitrust laws raises a different problem. The Civil Aeronautics Act, unlike the Interstate Commerce Act and the Shipping Act, does not authorize the award of damages by the Board for violation of its provisions. Where specific damage provisions are contained in regulatory statutes, it has been held that there may be no recovery of treble damages under the antitrust laws.[27] And this even in a statute such as the Interstate Commerce Act which contains a clause saving all preexisting rem-

23. 284 U.S. at page 487, 52 S.Ct. at page 251. See Isbrandtsen Co. v. United States, D.C.S.D.N.Y.1948, 81 F.Supp. 544, 546.

24. Transcontinental & Western Air, Inc.—Delta Air Lines, Inc., Interchange of equipment, 8 C.A.B. 857, 860 (1947).

25. See discussion in McLean Trucking Co. v. United States, 1944, 321 U.S. 67, 79–80, 85–86, 64 S.Ct. 370, 88 L.Ed. 544.

26. Terminal Warehouse v. Pennsylvania R. Co., 297 U.S. at page 513, 56 S.Ct. at page 551, 80 L.Ed. 827.

27. Terminal Warehouse v. Pennsylvania R. Co., 297 U.S. at page 514, 56 S.Ct. at page 551; U. S. Navigation Co. v. Cunard S. S. Co., 284 U.S. at pages 484–485, 52 S.Ct. at page 250, 76 L.Ed. 408; Keogh v. Chicago & N. W. Ry. Co., 260 U. S. at pages 163–164, 43 S.Ct. 47, 67 L. Ed. 183.

edies at common law or by statute. Here, however, we have both a saving clause, which provides that "Nothing contained in this Act shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies"[28] and a statute which conspicuously makes no provision for damages. Reading the saving clause in the light of congressional failure to provide a remedy for damages in the Civil Aeronautics Act, we conclude that Congress did not intend to deprive an air carrier of its right to seek treble damages for violations of the antitrust laws. This accords with the Supreme Court's determination that it could grant injunctive relief under the antitrust laws against a combination of railroads under circumstances where the Interstate Commerce Commission was not authorized to grant comparable relief.[29]

We do not intend to intimate that appellant may recover damages for appellees' violation of the Civil Aeronautics Act. Treble damages may be obtained only for injuries to business and property resulting from action forbidden by the *antitrust laws*. And the District Court rather than the Board, is the forum in which the latter issue must be resolved. What we are saying is that the same set of facts may give rise to both a violation of the Civil Aeronautics Act and a violation of the antitrust laws. Although the second does not necessarily follow from the first but is bottomed upon its own statutory standards, the antitrust remedy of treble damages is not defeated by the fact that the Civil Aeronautics Act is also violated. As we have already indicated, there can be no antitrust violation if a matter within the Board's jurisdiction is found by it to be legal under the Civil Aeronautics Act.

 We think accommodation of the two statutes and of the remedial provisions

thereof can best be accomplished as follows: The District Court should retain jurisdiction of the antitrust suit while appellant seeks his remedies from the Board. This is consistent with General American Tank Car Corp. v. El Dorado Terminal Co., 1940, 308 U.S. 422, 433, 60 S.Ct. 325, 331, 84 L.Ed. 361, in which the Court said, "When it appeared in the course of the litigation that an administrative problem, committed to the Commission, was involved, the court should have stayed its hand pending the Commission's determination of the lawfulness and reasonableness of the practices under the terms of the Act. There should not be a dismissal, but * * * the cause should be held pending the conclusion of an appropriate administrative proceeding."[30] The proceedings before the Board will result in a determination by it of the extent of its jurisdiction over the subject matter. In addition, they will produce a record, findings of fact and conclusions of law as to whether the specific practices complained of are legal or illegal under the Civil Aeronautics Act—all of which will be subject to judicial review under that Act. The District Court, which will meanwhile have retained jurisdiction of the antitrust suit, will have the benefit of these proceedings in determining the issue of antitrust violation.[31] Whatever damages might ultimately be awarded by it would be damages for violation of the antitrust laws, not the Civil Aeronautics Act. Similarly, whatever injunctive relief is ultimately granted by the District Court with regard to matters determined by the Board to fall outside its jurisdiction would be under the antitrust laws, not the Civil Aeronautics Act. Although such a procedure certainly makes court and agency "'collaborative instrumentalities of justice,'"[32] it may also make for considerable delay. But absent specific congressional action to deal with the problem, we see no other way in which to accommodate these

28. § 1106 of the Civil Aeronautics Act, 49 U.S.C.A. § 676.

29. Georgia v. Pennsylvania R. Co., 324 U. S. at page 455, 65 S.Ct. at page 725, 89 L.Ed. 1051.

30. See Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U. S. 246, 71 S.Ct. 692.

31. Cf. Emich Motors v. General Motors, 1951, 340 U.S. 558, 71 S.Ct. 408.

32. Montana-Dakota Utilities Co. v. Northwestern Public Service Co., supra.

conflicting statutory schemes and the principles which follow in their wake.[33]

Reversed and remanded.

CLARK, Circuit Judge (concurring in part).

I agree with the majority that this case should be reversed and remanded, but I differ somewhat as to what should be done with this complaint when it has been remanded.

If the Civil Aeronautics Act, 49 U.S.C.A. § 401 et seq., makes no provision for damages, the conclusion, it seems, is inescapable that the appellant should not be required to perform the useless task of making the request before the Civil Aeronautics Board. As the majority has said the District Court has jurisdiction to hear the complaint with respect to damages. Consequently there is no reason for the application of the doctrine of primary jurisdiction here. This conclusion is emphasized when the provisions of Section 414 of the Civil Aeronautics Act are considered. That section relieves "Any person affected by an order made under sections 408, 409 or 412 of this Act," from the operations of the antitrust laws. The obvious import of this section is that all persons not affected by an order made under these three sections are still subject to the antitrust laws. Since the three sections, exempted from Section 414, do not attempt to award damages it should be quite apparent that Congress did not intend to suspend the operation of the antitrust laws in this situation. This view is again reinforced by Section 1106 which provides that nothing in the Act shall "abridge or alter the remedies now existing at common law or by statute". This section affirmatively incorporates the antitrust remedies other than the three sections excepted by Section 414 of the Act. Section 22 of the Interstate Commerce Act, 49 U.S.C.A. § 22 has been emasculated by the courts, but that should not be done here where unlike the Interstate Commerce Act there is no provision for damages. If Section 22 of the Interstate Commerce Act were given effect, it would defeat the provisions of that Act which allow the Board not only to award damages under Section 16 of that Act, but to apply for an injunction to enforce its orders under Section 8 of that Act. This is not the situation in the instant case; at best the appellant could only have obtained partial relief by first applying to the Board.

The injunction requested in this complaint presents somewhat different problems. Under Section 411 the Board is given the power to issue cease and desist orders if an air carrier "is engaged in unfair or deceptive practices or unfair methods of competition". Undoubtedly this complaint urges unfair and deceptive practices and methods in at least one allegation of the complaint and consequently the Board in this instance, had it been requested or even on its own motion, could have issued a cease and desist order. Had the Board first determined whether a cease and desist order should issue the court would have had the benefit of its findings. It is also quite possible that the Board, by approving an order under Sections 408, 409 or 412 could materially change the position of the parties.

The appellant however chose to proceed in the courts rather than before the Board, and it did so with a complaint for damages which the majority, as I, have concluded is within the jurisdiction of the courts at least as far as damages are concerned. There is no sound reason why we should require the appellant to split his cause of action by obtaining a cease and desist order from the Board before coming into court to seek damages. Consequently I feel that, since the courts have jurisdiction to award damages, complete relief should be available to the appellant, and the request for an injunction should also be heard.

If an injunction is granted by the District Court neither the litigants nor the Board would find that they have been injured. While the injunction is outstanding, the court of course retains jurisdiction. If at

---

33. A decision in conflict with ours was recently handed down by Judge Forman of the United States District Court of New Jersey, Slick Airways v. Air Transport Ass'n, —— F.Supp. ——.

any time while the injunction is outstanding, the Board makes a determination which would materially alter the purpose and effect of the injunction either party can on application obtain a modification or termination of the injunction.

Consequently, I agree with the majority of this court that this case should be reversed and remanded. But I am also of the opinion that the appellant is entitled to have his complaint heard on its merits now and without resort to the Board.