## APGAR TRAVEL AGENCY, Inc. v. INTERNATIONAL AIR TRANSPORT ASS'N et al.

United States District Court
S. D. New York.

Oct. 2, 1952.

Marshall Perlin, New York City, for plaintiff.

Debevoise, Plimpton & McLean, New York City (Samuel E. Gates, New York City, Donald W. Markham, Washington, D. C., Robert von Mehren, New York City, of counsel), for defendants Air Transport Assn. of America.

Henry J. Friendly, New York City (John C. Pirie, New York City, of counsel), for defendants Pan American World Airways, Inc.

McGoldrick, Will, Dannett & Burke, New York City (Joseph D. McGoldrick, Emanuel Dannett, New York City, of counsel), for defendant Delta Air Lines, Inc.

Harold L. Russell, Atlanta, Ga. (Gambrell, Harlan, Barwick, Russell & Smith, Atlanta, Ga., of counsel), for defendant Eastern Air Lines, Inc.

Condon & Forsyth, New York City (Cyril Hyde Condon, John H. Montgomery, Jr., New York City, of counsel), for defendant British Overseas Airways Corp.

EDELSTEIN, District Judge.

This is a motion to dismiss the amended complaint in an action for injunctive relief and treble damages under the anti-trust laws. Plaintiff is an independent ticket agency serving, among others, non-scheduled (or irregular) air carriers. Defendants are four scheduled air carriers,[1] two trade associations of companies engaged in scheduled air transportation,[2] and a traffic conference which is a part of one of the defendant trade associations.[3] The complaint alleges a first cause of action charging an unlawful conspiracy among defendants to restrain interstate trade and commerce in air passenger transportation and the sale of tickets for air transportation of passengers,[4] and separate causes of action charging that each of the defendants attempted to monopolize and did monopolize and restrain trade and commerce in air transportation by individually committing the acts complained of in the first conspiracy cause of action. The gravamen of the complaint is a conspiracy to destroy the plaintiff's business, because of its rep-

1. British Overseas Airways Corporation, Delta Air Lines, Inc., Eastern Air Lines, Inc. and Pan American World Airways, Inc., all of whom hold certificates of public convenience and necessity or foreign air carrier permits issued by the Civil Aeronautics Board.

2. The International Air Transport Association (IATA), a trade association composed of substantially all of the United States flag and foreign flag air carriers which are engaged in scheduled international air transportation under appropriate authorizations from their governments; and the Air Transport Association of America (ATA), a trade association whose membership includes practically all of the United States flag air carriers which are authorized, by certificates of public convenience and necessity issued by the Board, to engage in scheduled air transportation domestically and internationally. IATA, apparently, has not been served and does not join in the motion to dismiss.

3. Air Traffic Conference of America (ATC), a division of ATA (note 2, supra) and is composed of the same membership.

4. The means and methods for the consummation of the conspiracy are alleged in the complaint (par. 23) to include:

"(a) A plan and program to coerce and force plaintiff and other travel agents to refrain from selling and distributing tickets for air passage on non-scheduled air lines, by means of direct threats of imposing and by imposing a commercial boycott upon plaintiff and by revoking plaintiff's ticket agency contracts with defendant air lines;

"(b) Organized threats of punitive boycott action against plaintiff in order to prevent and stop plaintiff's display of placards, posters and other advertising materials announcing the sale and distribution of air transportation tickets on non-scheduled air lines;

"(c) An attempt, through control and manipulation of the ATC and IATA system of approved travel agent lists, to destroy plaintiff's business and commercial standing;

"(d) Concerted use of the organizational structure, and the policy-making and policing powers of the ATC and IATA, to intimidate, coerce and restrain plaintiff from dealing as a travel agent with non-scheduled air lines, and to apply commercial boycott sanctions in punitive retaliation for such dealings with non-scheduled air carriers;

"(e) Utilization of the machinery of CAB proceedings to serve the carrying on and fostering of the concerted program to impose a destructive commercial boycott upon plaintiff;

"(f) Threats of reprisal and punitive action against plaintiff's travel agency business for testifying on behalf of a non-scheduled carrier before the CAB;

"(g) Harassing, disparaging, discrediting and impugning plaintiff's business dealings and relations;

"(h) A concerted cancellation of plaintiff's travel agency contract agreements with defendant air lines, designed to effectuate a commercial boycott against plaintiff in reprisal for plaintiff's refusal to cease dealing with the non-scheduled air lines; coercing and intimidating plaintiff into abandoning of agency agreements and rights thereunder; all of which was planned, organized and designed to injure, damage and destroy plaintiff's business."

The complaint also alleges violation of other provisions of the Civil Aeronautics Act, 49 U.S.C.A. § 401 et seq., which may be characterized as unfair trade practices.

The allegations of conspiracy here are in substantial degree similar to the conspiracy allegations in S. S. W., Inc. v. Air Transport Association, D.C.Cir., 191 F.2d 658, 660.

resentation of non-scheduled carriers by imposing a commercial boycott, ·thereby monopolizing and restraining trade and commerce in the sale of air transportation.

The basis of the motion is that the complaint alleges matters· within the primary jurisdiction of the Civil Aeronautics Board, and that this court lacks jurisdiction, in the absence of a preliminary resort to the Board, to grant the relief requested.

 The doctrine of the primary jurisdiction of administrative agencies is well established in a large body of learning commencing with Texas & Pacific Ry. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553. But the problem here presented, of the primary jurisdiction of the CAB in an antitrust suit, has been directly considered in only two cases, which reached opposite conclusions: S.S. W., Inc. v. Air Transport Association, D. C.Cir., 191 F.2d 658, and Slick Airways, Inc., v. American Airlines, Inc., D.C.N.J., Civil Action No. 317–50, 107 F.Supp. 199. Without embarking upon an extended discussion, I am constrained to·follow the reasoning of the S. S. W. case. The distinction urged that the plaintiff in the instant case is not an airline company, but merely a ticket agency, outside the jurisdiction of the CAB, is not well taken. The action directly involves the economic conduct of air carriers, a matter subject to the "detailed

and comprehensive" regulation by the Board,[5] and the plaintiff is certainly a "person" within 49 U.S.C. § 642(a), 49 U.S.C.A. § 642(a) who has standing to file a complaint stating its grievances within the jurisdiction of the Board over the regulated field. Cf., Far East Conference v. United States, 342 U.S. 570, 576, 72 S.Ct. 492.

 The determinative issue in this motion is the jurisdiction of the Board over agreements between air carriers in the nature of a conspiracy under the proscription of the antitrust laws. The air transportation industry is a regulated industry which, in the considered judgment of Congress, has been given a special status with relation to the antitrust laws. It is the national policy that unbridled competition in that industry is not in the national interest, and the CAB has been entrusted with the responsibility of making the accommodation between monopoly and competition, in the public interest. Thus, in addition to its other powers, the Board has the authority to exempt agreements between carriers from the ban of the antitrust laws,[6] in order to give effect to its regulatory powers. An examination of the statutory language[7] reveals the breadth of the scope of this power. The plaintiff contends, however, that a conspiracy to drive it out of business is not the type of agreement encompassed within the statute;[8] that only those agreements are

5. See S. S. W., Inc., v. Air Transport Association, supra, 191 F.2d at page 662.

6. 49 U.S.C. § 494, 49 U.S.C.A. § 494.

7. 49 U.S.C. § 492(a), 49 U.S.C.A. § 492 (a): "Every air carrier shall file with the Board a true copy, or, if oral, a true and complete memorandum, of *every contract or agreement* (whether enforceable by provisions for liquidated damages, penalties, bonds, or otherwise) affecting air transportation and in force on the effective date of this section or hereafter entered into, or any modification or cancelation thereof, between such air carrier and any other air carrier, foreign air carrier, or other carrier for pooling or apportioning earnings, losses, traffic, service, or equipment, or relating to the establishment of transportation rates, fares, charges, or classifications, or for preserving and improving safety, economy, and efficiency of operation, or for controlling, regulating, preventing, or oth-

erwise eliminating destructive, oppressive, or wasteful competition, or for regulating stops, schedules, and character of service, *or for other cooperative working arrangements.*" Emphasis supplied.

8. "I cannot concur with the *suggestion* that a conspiracy to drive a competitor out of business, as alleged here, is the type of agreement encompassed within the statute and subject to the primary jurisdiction of the CAB for approval or disapproval and for possible immunity from the anti-trust laws. Further I cannot accept the thesis that since the CAB has the power to approve agreements or combinations which might otherwise violate the anti-trust laws, it would be necessary first to prove before the CAB a conspiracy to restrain trade and then have the Board disapprove the conspiracy before a litigant could seek redress for damages in the courts. Such a conspiracy being inherently secretive

covered which are contracts openly arrived at rather than secret conspiracies; and further, that the evident purpose is the regulation of relationships and agreements among air carriers themselves. But in view of the Board's construction of "contract or agreement" within the meaning of 49 U.S.C. § 492(a), 49 U.S.C.A. § 492(a), as "intended, like the word 'contract' in section 1 of the Sherman Act [15 U.S.C.A. § 1], to include all understandings which are, or may become, the basis of concerted action",[9] the limited definition urged is not persuasive. Moreover, the alleged agreement in U. S. Navigation Co. v. Cunard S. S. Co., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408, under the highly analogous Shipping Act,[10] included "secretive and furtive" conspiratorial features, which were held not exempt from the primary jurisdiction of the Shipping Board. And finally, the conspiracy complained of, assuming its existence, must inevitably call into issue the relationships between air carriers themselves, particularly those between the scheduled and non-scheduled carriers. In Georgia v. Pennsylvania R. Co., 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051, the Supreme Court expressly held that Congress had not given the Commission authority to exempt the combination there complained of from the prohibitions of the antitrust laws. It is my opinion that Congress has not so limited the authority of the CAB. Of course, regulated industries are not *per se* exempt from the antitrust laws, Georgia v. Pennsylvania R. Co., supra, 324 U.S. at page 456, 65 S.Ct. 716. But with the broad power of exemption possessed by the Board under the Civil

Aeronautics Act, we cannot know the extent of exemption until the Board has acted. I conclude, therefore, that here, too, the Act "covers the dominant facts alleged in the present case as constituting a violation of the Anti-Trust Act",[11] and that the problem is one for the primary consideration of the Civil Aeronautics Board.

■■ It is true that no agreements have been filed or Board approval obtained under the statutory scheme for acquiring exemption, and it is argued that no exemption may be obtained except in the precise manner set forth by the governing statute, United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 226–227, 60 S.Ct. 811, 84 L.Ed. 1129. But in the Cunard case and the recent Far East Conference v. United States decision, supra, the Supreme Court has held the failure to file an agreement with the Shipping (now Maritime) Board, under statutory provisions analogous to those of the Civil Aeronautics Act, to be irrelevant to the issue of primary jurisdiction. Similarly, it must be taken as authoritatively established by these cases, that the Board has authority primarily to adjudge and hear the matter even though the alleged agreement be unlawful on its face.[12] The thought that the CAB has authority, for example, to exempt a conspiracy of the defendants to induce landlords to impose restrictive covenants in leases with independent travel agencies, precluding them from selling non-scheduled air transportation, is one to paralyze the judicial conscience. But the limits of the Board's authority are not in issue here. The issue at this time is merely one

and furtive in nature is not the type of subject matter which would be dealt with by an order made under §§ 488, 489 or 492 so as to be relieved from the operation of the anti-trust laws." Judge Forman, in Slick Airways, Inc., v. American Airlines, Inc., D.C.N.J. Civil Action No. 317–50, 107 F.Supp. 199.

9. Transcontinental & Western Air, Inc.-Delta Air Lines, Inc., Interchange of Equipment, 8 C.A.B. 857, 860; see S. S. W., Inc., v. Air Transportation of America, supra, 191 F.2d at page 663.

10. 46 U.S.C. §§ 801–842, 46 U.S.C.A. §§ 801–842; compare 46 U.S.C. § 814, 46 U.S.C.A. § 814, with 49 U.S.C. § 492(a),

49 U.S.C.A. § 492(a). See 50 F.2d 83, 84–85 (2 Cir.) for a detailed exposition of the alleged conspiracy in the Cunard case.

11. U. S. Navigation Co. v. Cunard S. S. Co., 284 U.S. 474, 483, 52 S.Ct. 247, 250, 76 L.Ed. 408 quoted in S. S. W., Inc. v. Air Transport Association of America, supra, 191 F.2d at page 662.

12. In the Far East Conference case, the dissenting opinion, 342 U. S. at page 577, 72 S.Ct. 492, takes issue both with this proposition and with the preceding proposition of the irrelevance of a failure to file an agreement and have it approved by the Board.

711

of priority of jurisdiction, and that priority rests with the administrative agency. Furthermore, it is not to be presumed that the Board will abuse its authority, but on the contrary, that it will exercise its power "upon a full consideration of all the attending circumstances"[13] which it is peculiarly qualified to evaluate.

■■ The most troublesome problem in the case is the fact that the Board, in the exercise of its jurisdiction, has no authority to award the plaintiff damages for an injury suffered as a result of a violation of the Civil Aeronautics Act. The decision of the Supreme Court in the Cunard case was grounded upon the fact that the allegations of the complaint setting forth antitrust law violations also constituted charges of violations of the Shipping Act, which affords a remedy and which to that extent supersedes the antitrust laws. But I do not read the Cunard case as authority for the proposition that the antitrust laws are superseded by a regulatory statute only where a complete remedy is provided in that statute for its violation coextensive with an illegal conspiracy under the antitrust laws.[14] It has been held that the antitrust laws are superseded by specific regulatory statutes only *pro tanto* to the extent of the repugnancy between them, United States v. Borden, 308 U.S. 188, 198 et seq., 60 S.Ct. 182, 84 L.Ed. 181. There exists a repugnancy between the subject matter of the Civil Aeronautics Act and the Sherman and Clayton Acts, [15]

U.S.C.A. § 1 et seq., and to that extent the latter are superseded by the former, else the entire regulatory scheme be frustrated; but since the Aeronautics Act makes no provision for the remedy of damages, that remedy of the antitrust laws remains unaffected.[15] It is not to be doubted, and it is not contrarily urged, that the plaintiff may ultimately be entitled to a recovery of damages in this court under the antitrust laws on the basis of matters held by the Board to be outside the jurisdiction of or illegal under its governing statute. But primary jurisdiction to consider the allegations involving the subject matter of that statute is with the Board. The court, not the Board, possesses remedial jurisdiction to determine the existence of a conspiracy under the antitrust laws.[16] But the court is in no position to exercise its jurisdiction under the antitrust laws until the Board has exercised its jurisdiction under the Civil Aeronautics Act. Thus may be insured a uniformity of regulation in a field where such regulation requires a specialized, expert competence. For the doctrine of primary jurisdiction is conditioned, not upon the ability of the administrative agency to grant a remedy,[17] but upon the presence of problems calling for the kind of consideration which only the administrative agency is in a position to give. "Uniformity and consistency in the regulation of business entrusted to a particular agency are secured * * * by preliminary resort for ascertain-

13. U. S. Navigation Co. v. Cunard S. S. Co., supra, 284 U.S. at page 487, 52 S. Ct. 247, 251, 76 L.Ed. 408.

14. But see Slick Airways, Inc. v. American Airlines, Inc., supra.

15. 49 U.S.C. § 676, 49 U.S.C.A. § 676: "Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." But where specific damage provisions are contained in regulatory statutes, there may be no recovery of treble damages under the antitrust laws. U. S. Navigation Co. v. Cunard S. S. Co., supra; Terminal Warehouse v. Pennsylvania R. Co., 297 U.S. 500, 56 S.Ct. 546, 80 L.Ed. 827; Keogh v. Chicago & N. W. Ry. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183.

16. See Slick Airways, Inc., v. American Airlines, Inc., supra.

17. General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361; El Dorado Oil Works v. United States, 328 U.S. 12, 66 S.Ct. 843, 90 L.Ed. 1053; see also footnote 11 of the dissenting opinion of Justice Frankfurter in United States v. Interstate Commerce Commission, 337 U.S. 426, at page 464, 69 S.Ct. 1410, 1430, 93 L.Ed. 1451; "It should be pointed out that under Part II of the Act the Commission has no power to award damages; the doctrine of primary jurisdiction, however, is nevertheless applicable. Bell Potato Chip Co. v. Aberdeen Truck Line, 43 M.C.C. 337, 342–343."

ing and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure."[18] In the case at bar, I am persuaded that considerations of administrative expertness and uniformity of regulation are significantly involved. The controversy must necessarily concern the difficult and specialized problem of irregular air carriers, "raising issues of fact not within the conventional experience of judges * * * requiring the exercise of administrative discretion"[19] and certainly requiring a uniformity of approach. No decision of this court on the issue of conspiracy could be effectively rendered "without in some manner relating it to the lawfulness of the acts done * * * in execution of the agreement or contract, and * * * the determination of the lawfulness of those acts and their regulation [is] within the exclusive jurisdiction of the administrative agency."[20] Indeed, it appears that some of the matters alleged in the complaint have been approved by the Board or are presently under consideration by it. Consequently, even though the remedy of damages is not available to the plaintiff before the CAB, there must be preliminary recourse to that agency, and "the facts after they have been appraised by specialized competence [may] serve as a premise for legal consequences to be judicially defined."[21]

 In the S. S. W. case the Court of Appeals for the District of Columbia directed that instead of dismissing the complaint, the District Court should retain jurisdiction of the antitrust suit while appellant sought his remedies from the Board, consistent with the decision in General American Tank Car Corp. v. El Dorado

Terminal Co., 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361. It is suggested, however, that since the jurisdictional point has been raised here *in limine*, rather than in the course of litigation as in the El Dorado Terminal case, dismissal is the proper course. Armour & Co. v. Alton R. Co., 7 Cir., 111 F.2d 913. But in view of the remedial pattern formed by the Civil Aeronautics Act and the antitrust laws, particularly with respect to the recovery of damages, I feel that a stay of proceedings rather than dismissal is required. Any possible recovery of damages involves a two-step procedure, with the Board and the court performing separate but indispensable functions in sequence. Compare Far East Conference v. United States, supra. The procedure indicated dictates such "accommodation of the two statutes and of the remedial provisions thereof"[22] rendering the court and agency "collaborative instrumentalities of justice".[23]

Accordingly, the suit will be stayed pending administrative action.

---

18. Far East Conference v. United States, supra, 342 U.S. at pages 574–575, 72 S. Ct. at page 494.

19. 342 U.S. at page 575, 72 S.Ct. at page 494.

20. Dissenting opinion of Chief Justice Stone in Georgia v. Pennsylvania R. Co., 324 U.S. 439, at page 485, 65 S.Ct. at page 739.

21. Far East Conference v. United States, 342 U.S. 570, 574, 72 S.Ct. 492, 494.

22. S. S. W. Inc. v. Air Transport Association of America, supra, 191 F.2d at page 664.

23. Ibid.; Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U. S. 246, at page 264, 71 S.Ct. 692, 95 L.Ed. 912, dissenting opinion of Justice Frankfurter quoting from United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429.