**MOVERS' AND WAREHOUSEMEN'S ASSOCIATION OF AMERICA, Inc., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Civ. A. No. 2582–63.**

United States District Court
District of Columbia.

Feb. 26, 1964.

Herbert Burstein, New York City, and John Guandolo, Washington, D. C., for plaintiff.

William H. Orrick, Jr., Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of

Justice, and David C. Acheson, U. S. Atty., for defendant United States of America.

Robert W. Ginnane, Gen. Counsel, and H. Neil Garson, Asst. Gen. Counsel, I. C. C., for defendant I. C. C.

Bryce Rea, Jr., Washington, D. C., for intervening defendant Household Goods Carriers' Bureau.

Before DANAHER, Circuit Judge, and PINE and MATTHEWS, District Judges.

## PER CURIAM.

The matters before the court are motions by defendants and intervening defendant to dismiss the complaint.

In this case plaintiff "Movers" and intervening Household Goods Carriers' Bureau, hereinafter "Bureau", are agents who publish tariffs for motor common carriers engaged in transporting household goods in interstate commerce. Each has heretofore procured Commission approval of an agreement which provides for collective rate making among its members under § 5a of the Interstate Commerce Act, 49 U.S.C. § 5b. Each has published tariffs in behalf of such members.

On September 1, 1963 intervening Bureau filed certain superseding tariffs with the Interstate Commerce Commission. These tariffs produced rate reductions of approximately 4 per cent, and brought Bureau's members on a parity with those of Movers' members. Movers, thereupon, pursuant to 49 U.S.C. § 316(g), filed with the Board of Suspension of the Commission its protest to these rates. This protest alleged that the reduced rates were non-compensatory, were designed to entice traffic away from other carriers, would unfairly enhance the competitive position of the intervening defendant's members, and would precipitate a destructive rate war in the household goods moving industry.[1]

The Board of Suspension voted not to suspend the proposed rates. Thereafter Movers filed a petition for reconsideration in which, for the first time, it was alleged that Bureau's proposed reduced rates were illegal in that they were published in violation of the agreement above referred to.

This petition for reconsideration was considered by Division 2 of the Commission, acting as an appellate division. This Division thereafter decided not to suspend the rates.

Under Commission rules, petitioners for reconsideration of decisions of the Board of Suspension are required to rely wholly on information previously filed with the Board, except in unusual circumstances (§ 1.200 49 C.F.R. 1.200). No such circumstances were set forth in the petition for reconsideration, and therefore the Commission on appeal was confined to the record before the Board of Suspension, and the contention herein made was not before it.

This court, convened pursuant to 28 U.S.C. § 2284 and § 2325, has been asked to issue an injunction: (1) requiring the Commission to vacate the order of the Board of Suspension which had refused to suspend the contested tariffs and to institute an investigation into the lawfulness thereof; and (2) directing the Commission to enter an order suspending the contested tariffs pending investigation as to their lawfulness.

At oral hearing on motions to dismiss filed by the Bureau, the United States and the Commission, respectively, Movers abandoned the attack upon the reasonableness of the rates which had been the subject of its protest. Instead, it is claimed relief should be afforded on the narrow ground that the contested rates had been established without compliance by the Bureau with the provisions of its own § 5a agreement.[2]

---

1. Nowhere in the protest is there an allegation that Bureau's rates were published in violation of the provisions of its § 5b agreement.

2. None of Bureau's members is a party to this action. Neither is any member of Movers Association a party before the court. But see National Motor Freight.

■ Insofar as Movers seek relief from the court looking to the *suspension* of the contested rates because of the Commission's refusal to exercise its discretion, the court appears to be without jurisdiction under Arrow Transp. Co. v. Southern R. Co., 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963). There the Supreme Court held that Congress in vesting the power of suspension in the Commission "meant thereby to vest in the Commission the sole and exclusive power to suspend and to withdraw from the judiciary any pre-existing power to grant injunctive relief," and further that the "more plausible inference is that Congress meant to foreclose a judicial power to interfere with the *timing* of rate changes which would be out of harmony with the uniformity of rate *levels* fostered by the doctrine of primary jurisdiction." (Italics in opinion.) 372 U.S. 658, 667, 668, 83 S.Ct. 984, 988, 989, 10 L.Ed.2d 52. It would therefore appear that the court lacks jurisdiction to grant the injunction to vacate the order of the Suspension Board or to enter an order suspending the contested tariffs.

■ Insofar as Movers pray for a mandatory injunction that the Commission be directed to investigate the lawfulness of the contested rates, let us note at once that Movers here had not instituted an independent action against the Bureau.[3] This was not an antitrust suit in which the right of the Bureau members to enter into an agreement entitled to protection under 49 U.S.C. § 5b (9) had been challenged.[4] Movers sought no remedy pursuant to 49 U.S.C.

§ 5b(7) and § 13(1).[5] Instead, with adequate remedies available to it, Movers purported in its protest to attack the *rates*, as such, as permitted under 49 U.S.C. § 316(g). In its motion for reconsideration, for the first time it challenged the Bureau's right to *file* the contested rates. Movers thus sought to convert the rate proceeding into an assault upon Bureau's status under section 5b(9). Movers now ask the court to order the Commission to do what it was free in the exercise of its discretion not to do, at least absent arbitrary and capricious conduct. The relief here sought is not available in this action.[6]

The motions to dismiss are granted.

Traffic Assn. v. United States, 372 U.S. 246, 83 S.Ct. 688, 9 L.Ed.2d 709 (1963).

3. Cf. S. S. W., Inc. v. Air Transport Ass'n of America, 89 U.S.App.D.C. 273, 191 F.2d 658 (1951), cert. denied, 343 U.S. 955, 72 S.Ct. 1049, 96 L.Ed. 1355 (1952).

4. Cf. Atchison, Topeka & S. F. Ry. Co. v. Aircoach Transp. Ass'n, 102 U.S.App. D.C. 355, 363–364, 253 F.2d 877, 885–886 (1958), cert. denied, 361 U.S. 930, 80 S.Ct. 372, 4 L.Ed.2d 354 (1959); and see

generally, Riss & Co. v. Association of American Railroads, 170 F.Supp. 354 (D.C.1959); Atlantic Coast Line Railroad Company v. Riss & Company, 105 U.S.App.D.C. 380, 267 F.2d 657 (1958).

5. Cf. National Water Carriers Ass'n v. United States, 126 F.Supp. 87, 90–91 (S.D.N.Y.1954).

6. Arrow Transp. Co. v. Southern R. Co., 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963).