James F. McMANUS, Petitioner,
v.
CIVIL AERONAUTICS BOARD, Respondent.

United Air Lines, Inc., Intervenor-Respondent.

Nos. 92, 93, Dockets 25802, 25803.

United States Court of Appeals Second Circuit.

Argued Dec. 12, 1960.

Decided Feb. 6, 1961.

James F. McManus, pro se.

Morris Chertkov, Washington, D. C. (Franklin M. Stone, General Counsel, Civil Aeronautics Board, John H. Wanner, Deputy General Counsel, O. D. Ozment, Associate General Counsel, Litigation and Research, Abbott A. Leban, Robert A. Bicks, Acting Asst. Atty. Gen., Richard A. Solomon, Department of Justice, Washington, D. C., on the brief), for respondent.

Hardin, Hess & Eder, New York City, and Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., for intervenor.

Before LUMBARD, Chief Judge, and SWAN and MOORE, Circuit Judges.

LUMBARD, Chief Judge.

The petitioner, an owner of two travel agencies, seeks to have reviewed seven orders issued by the Civil Aeronautics Board during its consideration of resolutions promulgated and filed with the Board by the Air Traffic Conference of America (hereinafter ATC) and the International Air Transport Association (hereinafter IATA), trade associations of air carriers engaged respectively in domestic and international operations. The associations had been formed to take joint action on industry-wide problems. In these resolutions they established criteria and procedures for the selection, appointment, and retention of ticket agents, and provided that no member of an association could appoint or retain a travel agent who had not applied to that association and been approved by it.

The original resolution establishing this procedure was drawn up by ATC in 1940 and submitted for the approval of the Civil Aeronautics Board under § 412 of the Civil Aeronautics Act of 1938, later re-enacted as § 412 of the Federal Aviation Act of 1958, 49 U.S.C.A. § 1382. Approval was granted on April 18, 1941 (Order No. E–983). Subsequent agreements similar in substance were approved in 1945 and 1951. After having received complaints regarding the procedures instituted by the conference agreements, the Civil Aeronautics Board issued an order on October 31, 1956, instituting an investigation to determine whether the conference system for qualifying ticket agents established by the ATC resolution was in the public interest. Various parties, including the petitioner herein, were permitted to intervene, public hearings were held, and briefs were filed. In an Initial Decision dated November 3, 1958, the Hearing Examiner held that the ATC resolution was not adverse to the public interest and should be approved by the Board provided that certain amendments were made thereto. This decision was substantially adopted by the Civil Aeronautics Board in Order No. E–14012, dated June 10, 1959, which also kept the record open for 60 days to permit the ATC to file the required amendments. Two subsequent supplemental orders, No. E–14647 (November 12, 1959) and No. E–14924 (February 15, 1960), modified the order of June 10 by directing that certain additional amendments to the resolutions be filed. On April 22, 1960, the Board, in Order No. E–15143, dismissed the petitioner's motion seeking review of the decision of the Board's Chief of Compliance not to institute enforcement proceedings against the ATC for violating the Federal Aviation Act by acting under the approved resolution.

The petitioner also seeks review of three orders issued in the course of the Board's consideration of the related IATA resolution. At the same time as it authorized the ATC investigation, the Board instituted an investigation of a similar resolution submitted by the IATA. No further steps were taken

with respect to the IATA resolution during the pendency of the ATC investigation. In 1958 the petitioner demanded an immediate hearing with oral argument on a motion he had filed with the Board requesting it to withdraw its approval of a similar IATA resolution which had been approved eight years earlier. After some correspondence between the Board and the petitioner, the Board issued Order No. E–13959 (June 1, 1959), denying the request for a hearing and oral argument. Having decided to proceed with the IATA investigation once the ATC case had been completed, the Board on September 10, 1959, issued Order No. E–14436, in which it granted the petitioner leave to intervene but denied his motions that the Board immediately withdraw its approval of the resolution, that votes on an earlier motion be entered on the record, that copies of certain correspondence be made part of the record, and that the notice for a prehearing conference which had been scheduled be vacated. On September 30, 1959, the Board issued Order No. E–14508, in which certain IATA resolutions relating to sales agents were approved "except as they apply to the United States." It is these orders that the petitioner wishes to have reviewed by this court along with the orders issued in the course of the ATC investigation.

## I.

■ The petitioner claims that this court has jurisdiction to review the above orders under § 1006 of the Federal Aviation Act of 1958, 49 U.S.C.A. § 1486, and § 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009. Although the judicial-review section of the Federal Aviation Act is broadly phrased so as to authorize review of "any order, affirmative or negative, issued by the Board or Administrator," it also provides that review must be at the behest of "any person disclosing a substantial interest in such order." Order No. E–14508, which approved several IATA resolutions only insofar as they affected agents outside the United States, in no way prejudiced the petitioner. The petition-

er, therefore, does not have the "substantial interest" required by the statute to challenge Order No. E–14508.

■■ The Board's order must be a final one to be reviewable. Although the statute does not expressly require that the order be final before it may be reviewed, the requirement of finality was read into § 1006 of the statute's predecessor, the Civil Aeronautics Act of 1938, which was phrased in identical terms. See, e. g., Eastern Air Lines v. C. A. B., 1956, 100 U.S.App.D.C. 184, 243 F.2d 607; Western Air Lines v. C. A. B., 9 Cir., 1950, 184 F.2d 545; cf. Chicago & Southern Air Lines, Inc. v. Waterman S. S. Corp., 1948, 333 U.S. 103, 112–113, 68 S.Ct. 431, 92 L.Ed. 568. The Board's refusal to grant the petitioner a hearing on his motion requesting immediate disapproval of the IATA resolution did not deny a right or fix any legal relationship. If this order deprived the petitioner of any right granted by the statute, it may be reviewed when the final order issues. But it would needlessly encumber the administrative process if any denial of a hearing were held to be reason for staying further agency proceedings until the validity of such denial were passed upon by a court of appeals.

■ Similarly, the decisions relating to various procedural details made by the Board in its order of September 10, 1959, did not determine any rights or relationships and may not be reviewed at this time. Nor can the petitioner have these orders reviewed under § 10(c) of the Administrative Procedure Act, 5 U.S.C.A. § 1009(c), which authorizes review of "every agency action made reviewable by statute and every *final agency action* for which there is no other adequate remedy in any court." (Emphasis added.) Cities Service Gas Co. v. F. P. C., 10 Cir., 1958, 255 F.2d 860, certiorari denied Magnolia Petroleum Co. v. Cities Service Gas Co., 358 U.S. 837, 79 S.Ct. 61, 3 L.Ed.2d 73; see Isbrandtsen Co. v. United States, 1954, 93 U.S.App.D.C. 293, 211 F.2d 51, certiorari denied Japan Atlantic & Gulf Conference v. U. S., 347 U. S. 990, 74 S.Ct. 852, 98 L.Ed. 1124. The

decisions made by the Board in its order of September 10, 1959, are of the kind encompassed by the second sentence of § 10(c) of the Administrative Procedure Act, which directs that "any preliminary, procedural, or intermediate agency action or ruling not directly reviewable shall be subject to review upon the review of the final agency action." Since review is available at that time, the petitioner has an adequate remedy by review of the final decision. The petitions to review the orders entered in the course of the IATA investigation, Nos. E–13959, E–14436, and E–14508, are therefore dismissed.

## II.

The Board's orders approving the ATC resolution, however, are reviewable final actions, and we proceed to consider the petitioner's objections. The resolution provided for the establishment of an Agency Committee with which applications would be filed by potential ticket agents. Only if the committee approved of the applicant would his name be entered on the ATC Agency List from which member carriers were required to select their agents. The Hearing Examiner and the Board held the plan not adverse to the public interest since it would, if properly administered, bring about a rise in the standards of agency representation. As a result of the Board's approval, carriers acting under the resolution were, by reason of § 414 of the Federal Aviation Act, 49 U.S.C.A. § 1384,[1] exempted from the operation of the antitrust laws. The Board was aware of the restrictive effect which this practice would have on competition in the ticket-agent market and its possible abuse, but it approved of the resolution nonetheless.[2]

The petitioner makes several attacks on the validity of the orders, the major claims of substance being that the ATC resolution was not within the scope of § 412, that the Board's order, being conditional, was beyond its authority, and that §§ 412 and 414 amount to an unconstitutional delegation of legislative power to the airline industry and the Civil Aeronautics Board.

The language of § 412 [3] encompasses all contracts and agreements be-

[1]. "Legal Restraints

"Sec. 414. Any person affected by any order made under sections 408, 409, or 412 of this Act shall be, and is hereby, relieved from the operations of the 'antitrust laws', as designated in section 1 of the Act entitled 'An Act to supplement existing laws against unlawful restraints and monopolies, and for other purposes', approved October 15, 1914, and of all other restraints or prohibitions made by, or imposed under, authority of law, insofar as may be necessary to enable such person to do anything authorized, approved, or required by such order."

2. In the opinion accompanying Order No. E–14012, the Board said at page 12:

"It must always be realized that this entire system of joint carrier screening of travel agencies is a substantial departure from the normal free competitive practices of our economy, and that it would be clearly in violation of the Federal antitrust laws were it not for the immunity extended by Section 414 of the Act."

3. "Pooling and Other Agreements

"Filing Of Agreements Required

"Sec. 412. (a) Every air carrier shall file with the Board a true copy, or, if oral, a true and complete memorandum, of every contract or agreement (whether enforceable by provisions for liquidated damages, penalties, bonds, or otherwise) affecting air transportation and in force on the effective date of this section or hereafter entered into, or any modification or cancellation thereof, between such air carrier and any other air carrier, foreign air carrier, or other carrier for pooling or apportioning earnings, losses, traffic, service, or equipment, or relating to the establishment of transportation rates, fares, charges, or classifications, or ‚for preserving and improving safety, economy, and efficiency of operation, or for controlling, regulating, preventing, or otherwise eliminating destructive, oppressive, or wasteful competition, or for regulating stops, schedules, and character of service, or for other cooperative working arrangements.

"Approval By Board

"(b) The Board shall by order disapprove any such contract or agreement, whether or not previously approved by it, that it finds to be adverse to the public interest, or in violation of this Act, and shall by order approve any such contract

tween air carriers for pooling services or for preserving efficiency of operation. The conference agreement considered by the Board in this case comes clearly within the statutory language. See United States Lines Co. v. C. A. B., 2 Cir., 1948, 165 F.2d 849; Apgar Travel Agency, Inc. v. International Air Transp. Ass'n, D.C. S.D.N.Y.1952, 107 F.Supp. 706. It may well be that Congress did not intend to cover so broad an area by enacting § 412, and that the airlines should not be permitted to exercise concerted control which is immune from antitrust regulation over some related industry such as that of ticket agencies. But there is no indication in either the words of the statute or in its legislative history that would justify our reading §§ 412 and 414 narrowly to insulate airlines from antitrust liability to other airlines only and not to protect it from suits by those engaged in affiliated services affected by an agreement among the airlines.

Nor is there any merit to the petitioner's contention that the Board, once having approved an agreement, could not act on its own to investigate and conditionally disapprove. The exemption from the operation of the antitrust laws is valid only so long as the Board believes that the agreement is not adverse to the public interest. Section 412(b) clearly provides that one decision on an agreement does not bind the Board as to later agreements, and that it may disapprove an agreement "whether or not previously approved by it." If complaints regarding the operation of a system established by an approved resolution come to its attention, the Board is justified in reopening the case and considering the agreement anew. Nor is the Board bound to approve or disapprove agreements in their entirety. It is true that § 15 of the Shipping Act of 1916, 46 U.S.C.A. § 814, on which § 412 of the

Civil Aeronautics Act was modeled, provides that the Federal Maritime Board may "disapprove, cancel, or modify any agreement," whereas § 412 says only that the Board may "by order disapprove." However, the power to condition its approval on the incorporation of certain amendments is necessary for flexible administrative action and is inherent in the power to approve or disapprove. We would be sacrificing substance to form if we held invalid any conditional approval but affirmed an unqualified rejection accompanied by an opinion which explicitly stated that approval would be forthcoming if modifications were made.

The petitioner's final objection is that the procedure established by §§ 412 and 414 of the act amounts to an unconstitutional delegation of legislative power. Our attention is called to the decisions of the Supreme Court in Carter v. Carter Coal Co., 1936, 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160, and Schechter Poultry Corp. v. United States, 1935, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570. No legislative delegation exists here, however. Under § 412 agreements between air carriers are to be filed with the Board and approved or disapproved by it. These agreements bind only the parties to them, and impose no restriction on carriers who are not parties. Nor does the Board's approval of an agreement amount to an unconstitutional exercise of legislative power. By reason of § 414, activity pursuant to an approved agreement is insulated from the operation of the antitrust laws, but the Board may approve only such agreements as are not "adverse to the public interest." This standard is definite enough to withstand constitutional attack, see New York Central Securities Corp. v. United States, 1932, 287 U.S. 12, 24, 53 S.Ct. 45, 77 L. Ed. 138, and the exemption from regulation of such concerted activity as, in the

or agreement, or any modification or cancellation thereof, that it does not find to be adverse to the public interest, or in violation of this Act; except that the Board may not approve any contract or agreement between an air carrier not directly engaged in the operation of air-

craft in air transportation and a common carrier subject to the Interstate Commerce Act, as amended, governing the compensation to be received by such common carrier for transportation services performed by it."

opinion of a regulatory public agency, meets the standard is not unlawful. Sunshine Anthracite Coal Co. v. Adkins, 1940, 310 U.S. 381, 396, 60 S.Ct. 907, 84 L.Ed. 1263.

We therefore dismiss the petitions to review the orders relating to the IATA investigation and affirm the orders entered pursuant to the ATC investigation.