John **CACERES** d/b/a **Caceres Agency et al., and others similarly situated,**
Plaintiffs,

v.

**INTERNATIONAL AIR TRANSPORT ASSOCIATION et al., Defendants.**

**No. 68 Civ. 3453.**

United States District Court
S. D. New York.

Jan. 29, 1969.

LoFrisco & Gallagher, New York City, for plaintiffs; Anthony F. LoFrisco, Martin R. Gold, William D. Gallagher, and Ronald J. Scheuermann, New York City, of counsel.

Chadbourne, Parke, Whiteside & Wolff, New York City, for defendants; Carl S. Rowe, and Harold L. Warner, Jr., New York City, of counsel.

MANSFIELD, District Judge.

In this purported class action brought to recover treble damages on the basis of alleged violation of the antitrust laws, defendant International Air Transport Association ("IATA") and the other defendants, airline members of IATA, move for a determination by the Court that this action is not maintainable as a class action pursuant to Rule 23(c) (1), F.R.Civ.P.

Plaintiffs are owners and operators of travel agencies engaged in the business of booking and selling domestic and foreign air travel accommodations to the public, for which they are usually compensated by the airlines' payment to them of a commission on receipts from tickets sold by them. The class plaintiffs purport to represent comprises all agencies which applied to IATA for approval as passenger or cargo agents authorized to sell international air travel on the defendant airlines and which received initial notices of disapproval between August 1964 and August 1968. IATA, by affidavit of its agency officer for the Western Hemisphere, indicated that during this period there were 2,200 applications for approval by IATA by passenger sales or cargo agents. 798 were initially disapproved; of this group 401 were approved upon reconsideration or arbitration, 64 were pending on reconsideration, 9 on arbitration, and 324 had been withdrawn or disapproved as of October, 1968. On the basis of these figures the class plaintiffs seek to represent would number 798, although the position of the members vis a vis IATA at the present time varies.

IATA is an association of almost all airlines engaged in international air transport service. It exists by special Act of the Parliament of the Dominion of Canada and was organized as a non-governmental entity for the purpose of providing "collaboration among the air transport enterprises engaged directly or indirectly in international air transport service". According to an affidavit of plaintiffs' counsel, IATA carriers account for approximately 95% of the scheduled air transportation between the United States and foreign countries. If a travel agent is not included on the list of IATA approved agents, it cannot act as agent for any of the IATA members according to IATA Agency Resolutions TC1 810a and TC1 810b, which were adopted by a unanimous vote of the members of IATA. A disapproved travel agent is, therefore, effectively precluded from doing business in the area of international air travel. Approval by IATA as an agent is therefore a significant matter for travel agencies such as plaintiffs herein.

The route by which plaintiffs seek here to assert a violation of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 and 15, against IATA and its members is more circuitous than in the usual antitrust case for the reason that airline carriers have been permitted by Congress, subject to approval by the Civil Aeronautics Board, 49 U.S.C. § 1382(b), to enter into agreements and engage in conduct that would otherwise constitute an illegal restraint of trade, immunity being extended with respect to such activities by 49 U.S.C. § 1384, which provides:

"Any person affected by any order made under sections 1378, 1379, or 1382 of this title shall be, and is hereby, relieved from the operations of the

'antitrust laws' \* \* \* insofar as may be necessary to enable such person to do anything authorized, approved, or required by such order."

One of the areas of agreement between IATA members has been the adoption of agency resolutions TC1 810a and TC1 810b establishing requirements that must be met for the selection, approval and qualification of agents engaged in the sale of international air transportation for IATA members, which were approved by the CAB after an extensive investigation, including hearings before an examiner, which approval was affirmed by the Court of Appeals for the Second Circuit. ATC Agency Resolution Investigation, 29 CAB 258 (1959); IATA Agency Resolutions Investigation, 33 CAB 157 (1961); McManus v. C. A. B., 286 F.2d 414 (2d Cir. 1961), cert. denied, 366 U.S. 928, 81 S.Ct. 1649, 6 L. Ed.2d 388 (1961). The justification urged in support of the resolutions was the need to protect the travelling public and airline members against possible irresponsibility on the part of some travel agencies by requiring minimum standards of financial responsibility, experience and demonstrated capability in selling and promoting international air travel.

In view of the CAB's approval of the resolutions, no basis exists for attacking them as violative of the antitrust laws (even though plaintiff characterizes the defendants' conduct in implementing them as an "illegal boycott") since they have been immunized by reason of the CAB approval. Plaintiffs' antitrust claim is founded on a much narrower base. They contend that the defendant IATA's procedure in disapproving applicants has not complied with the order of the CAB approving the IATA agency resolutions and that the defendants have therefore lost the antitrust immunity granted to them by § 1384. Cf. Trans World Airlines, Inc. v. Hughes, 332 F.2d 602 (2d Cir. 1964), cert. dismissed, 380 U.S. 248, 249, 85 S.Ct. 934, 13 L.Ed.2d

817 (1965). More specifically plaintiffs contend that defendants have departed from an essential condition of the resolutions by their failure upon disapproval of applicants to state in the initial notice of disapproval the reasons specifically enough to enable the applicant to make an intelligent determination as to whether he can correct his deficiencies or specifically to provide the applicant with an adequate foundation for utilization of arbitration or appeal procedures available to him.

It is against the foregoing background that we must decide whether this action qualifies to be maintained as a class action under Rule 23, as amended in 1966, and particularly § (b) (3) thereof. There appears to be no dispute that the four prerequisites to maintaining a class action established by Rule 23(a) are present. Since plaintiffs do not contend that the action qualifies under Rule 23(b) (1) or 23(b) (2) for treatment as a class action, the principal issue is whether it qualifies under Rule 23(b) (3), which provides that a class action may be maintained if:

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

Although this subsection's requirements resemble that of the "spurious" class action under the old Rule 23, the new rule renders the class action more than just a form of "permissive joinder" device, California Apparel Creators v. Wieder of California, 162 F.2d 893, 897 (2d Cir. 1947), cert. denied, 332 U.S. 816, 68 S. Ct. 156, 92 L.Ed. 393 (1947), by binding all absent members of the class except those who explicitly indicate that they do not wish to be included. Rule 23(c) (2). See Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39 (1967). For this reason, the Court is required to analyze closely each individual case in light of the requirements of section (b) (3) to determine whether class action treatment is authorized. Although the new rule is to be construed liberally in favor of class actions, Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968); Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968) and others, Hohmann v. Packard Instrument Co., 399 F.2d 711 (7th Cir. 1968); Epslin v. Hirschi, CCH Fed.Sec.L.Rep. ¶ 92, 276 (10th Cir. 1968), qualification is not mandatory but must depend on the particular circumstances under consideration.

*Predominance of Common Questions*

The group of agents whom plaintiffs seek to represent as a class were for various periods of time prohibited from acting as agents for IATA members due to the fact that they had been disapproved by joint action of members of IATA. This is not, however, like a case where the plaintiff's proof of an alleged conspiracy constitutes a major overriding issue. Cf. Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968). There is no issue here as to the existence of a "conspiracy" to refuse to deal with the disapproved applicants. The agreement, whether it be characterized as a "boycott" or "concerted refusal to deal" is established by the IATA resolutions themselves and admitted by the defendants. If the antitrust immunity under § 1384 is unavailable, then it would seem that defendants do come within the well established rule of Klor's Inc. v. Broadway-Hale Stores Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959) (holding a concerted boycott to be a *per se* violation of § 1 of the Sherman Act), and would be liable for damage resulting from their refusal to deal with plaintiffs.[1]

---

1. Although the Supreme Court in *Klor's* did not explicitly state that concerted refusals to deal constitute a *per se* violation of § 1 of the Sherman Act, the Court did say:

 "Group boycotts, or concerted refusals by traders to deal with other traders, have long been held to be in the forbidden category [citing six cases]. They have not been saved by allegations that they were reasonable in the specific circumstances, nor by a failure to show that they 'fixed or regulated prices, parcelled out or limited production, or brought about a deterioration in quality.' Fashion Originators' Guild v. Federal Trade Comm'n, 312 U.S. 457, 466, 467–468 [61 S.Ct. 703, 707, 85 L.Ed. 949]. Cf. United States v. Trenton Potteries Co., 273 U.S. 392 [47 S.Ct. 377, 71 L.Ed. 700]. Even when they operated to lower prices or temporarily to stimulate competition they were banned.

 For, as this Court said in Kiefer-Stewart Co. v. [Joseph E.] Seagram & Sons, 340 U.S. 211, 213 [71 S.Ct. 259, 260, 95 L.Ed. 219], 'such agreements, no less than those to fix minimum prices, cripple the freedom of traders and thereby restrain their ability to sell in accordance with their own judgment.' Cf. United States v. Patten, 226 U.S. 525, 542 [33 S.Ct. 141, 145, 57 L.Ed. 333]." (359 U.S. at 212, 79 S.Ct. at 709)

 Although it is true that in the *Klor's* case it was not asserted that the group boycott had redeeming purposes, see P. Areeda, Antitrust Analysis, ¶¶ 374(c) and 388, in this case whatever redeeming social good flows from the IATA arrangements has already been considered by the CAB which has set limits to the manner in which these useful purposes may be carried out. See 33 CAB 262–65. If the airlines, through IATA, have ex-

The overriding issue in this case, then, is not the existence of a concerted agreement, which is admitted, but whether the disapproval notice given to applicants violated the IATA Agency Resolutions approved by the CAB and thereby destroyed the defendants' antitrust immunity. The CAB approval was conditioned, *inter alia*, upon defendants giving notice to rejected applicants of the reasons for disapproval in order to "solve the basic problem of insuring that the applicant is actually informed of the real reason for his rejection," 33 CAB at 170, with the notice to be "phrased in terms more definite than the standards themselves," ATC Agency Resolution Investigation, 29 CAB 258, 264 (1959) (standards made applicable to IATA Agency Resolutions, 33 CAB at 170). It is plaintiffs' contention that there are common questions with respect to this issue because the initial notice received by each rejected applicant was substantially identical.

The initial notice of disapproval consists of two pages. The first page is a mechanically reproduced form letter which simply informs the applicant of its disapproval and indicates that it has a right to apply for reconsideration within 30 days. The second page purports to advise the applicant of the reasons for his rejection. It consists of a mechanically reproduced extract from the IATA Agency Resolution listing the bases upon which disapproval may rest. An asterisk is placed next to the basis or bases applicable in the individual case. In some cases a brief explanation is provided at the bottom of this page, but the explanation is not, according to the deposition testimony of IATA official Arnold Adams, tailored to the facts of the individual applicant's case, but is a standardized elaboration on the resolution subsection indicated to be the basis for disapproval. This substantially

identical notice, mailed to all disapproved applicants is, according to plaintiff, insufficient to comply with the terms of the CAB approval of the IATA Agency Resolutions and, therefore, the antitrust immunity is eliminated.

It is true that at the time of the receipt of the initial notice of disapproval all rejected applicants were in the same position. It furthermore seems plain that this initial notice does not comply with the directive of the CAB; the applicants are informed of the reason for their rejection in terms only of the general standards of the resolutions themselves; this type of notice was explicitly stated by the CAB to be inadequate. 29 CAB at 164. The minimum requirement specified by the CAB was a notice specifying the reasons for rejection in sufficient detail to enable the applicant to cure the defect or, if he chose not to do so, to provide a record sufficient to permit effective use of arbitration or appeal procedure. The purpose of the CAB in specifying such a requirement cannot be met by oral or telephonic communications. Written notice is essential.

If the IATA Committee's conduct in giving notice of disapproval had been limited to the *pro forma* document initially sent to the rejected applicant, the notice would be insufficient and a common question might exist that would qualify the action for treatment as a class suit under Rule 23(b) (3). The record reveals, however, that the statement of reasons was not limited to the initial written communication, and that further notice was given. It appears from papers submitted by defendants, moreover, that some of the named plaintiffs herein received more detailed information with respect to IATA's version of their precise shortcomings upon indicating that they wished to be reconsidered. For example, plaintiff The Trav-

---

ceeded these limits, they cannot, it seems, fall back on the same justifications they

relied on to obtain the Board's approval and the consequent antitrust immunity.

el Shoppe Inc. had been an approved IATA agent since 1961; after certain defaults by Travel Shoppe in payment for domestic air travel billings came to the attention of IATA, its approval was cancelled in April, 1967. It made a new application for approval which was rejected in February, 1968, and upon its request for reconsideration it received a letter from IATA dated March 21, 1968 which outlined the specific respects in which the IATA Agency Committee found its financial standing to be inadequate and indicated the minimum standards generally applied by IATA with respect to the amount of liquid assets on hand, amount of excess of current assets over current liabilities, and capital investment required for approval. Reconsideration of Travel Shoppe's application is currently pending.

Plaintiff Caceres Agency, whose initial application was rejected in February, 1965, was advised in writing in March, 1965, in response to an application for reconsideration, of the evidence it could submit to rebut findings by the IATA Agency Committee that its productivity of international air transportation, its working capital (consisting of $4,340 and an excess of current assets over liabilities of $2,000) were inadequate. A later letter, dated August 28, 1967, sent after several applications for reconsideration were rejected, furnished details as to inadequacy of personnel, premises, production, promotion and finances, coupled with advice as to IATA's minimum standards. Caceres has since been found qualified through arbitration.

Other plaintiffs have received various communications with IATA in connection with their applications for approval. An analysis of the papers submitted by defendants with respect to the seven named plaintiffs indicates that even among this relatively small group there are substantial differences with respect to:

(a) the reasons given by IATA for rejection;

(b) the amount and quality of the information they have received from IATA as to the reasons for their rejection and means by which they could improve their position; and

(c) the ultimate result of their applications.

Plaintiffs assert, however, that all of these differences are irrelevant and that IATA's compliance with the CAB order must be determined solely on the basis of the initial notice of disapproval, which all members of the class received in a substantially identical form. Nothing in the relevant CAB opinions relating to the issue, however, indicates that the adequacy of the notice was to be determined on such a narrow basis. The CAB purpose in requiring that full notice of reasons be given to the rejected applicant was to insure that the applicant would be provided with an adequate basis upon which to make an intelligent decision as to whether it should attempt to cure its deficiencies or, if it should in lieu thereof desire to invoke arbitration as a means of reversing the IATA Committee, to provide a record or foundation for effective utilization of arbitration procedure. 33 CAB at 170; 29 CAB at 264. The objective was to insure due process rather than to freeze the notice procedure or limit the Committee to one initial document that must set forth all reasons at IATA's peril. Substantive rather than formalistic standards must govern, and even though an initial notice may amount to nothing more than a notification of rejection, if later formal communications, furnished within a reasonable period, outline in detail the reasons for the IATA Committee's action, the purposes of the CAB's requirement of notice may still be fulfilled.

Thus, without passing upon the adequacy of the notice given to any plaintiff herein, it appears that the predominant issue, the adequacy of the notice,

must be determined as to each individual plaintiff on the basis of the notice and advice it received, as distinguished from notice given to others; and in view of the substantial differences as to reasons given, amount and quantity of information furnished, and ultimate result as to each application, the determination of the principal issue might differ, depending on the facts in each case, and would in any event require a separate review of the communications between the IATA Committee and each applicant. In view of these circumstances the Court is forced to conclude that the action fails to meet the first requirement of Rule 23(b) (3).

### Superiority of the Class Action

Assuming *arguendo* that the common questions of fact and law in this case would predominate, it would still be necessary to find that a "class action is superior to other available methods for the fair and efficient adjudication of the controversy" Rule 23(b) (3). The rule itself provides four non-exclusive factors pertinent to this determination. Application of these four factors to the instant case does not clearly demonstrate that a class action would be superior to other methods of adjudicating this controversy. There is no indication that the members of the purported class would have a strong interest in conducting individual actions; nor are there any pending actions already commenced by any class members to consider. There is no particular desirability or undesirability with respect to concentrating the litigation in this forum. Much of the evidence could be most conveniently obtained in this district, since the IATA offices are located here, but, on the other hand, relevant evidence concerning rejected applicants, which are located throughout the country, would be found elsewhere. The administrative difficulties in managing this action as a class action would not be unduly burdensome; although the class is quite large, its members may be easily located by reference to the IATA files.

One very important factor found to favor a class action in both Green v. Wolf, supra, and Eisen v. Carlisle & Jacquelin, supra, does not appear to be present in this case. In both of those two cases the claims of each member of the class appeared to be too small to give them an incentive to bring an individual action. In *Green*, supra, the representative plaintiff claimed losses of less than $1,000 (Slip Op. at 500 n. 6), and in *Eisen* the representative plaintiff's claim was for only $70, 391 F.2d at 566. Thus in both of those cases denial of a class action would have resulted in none of the members' claims being asserted. Although plaintiffs contend that this same factor is present here, it must be observed that treble damages in the amount of $120,000,000 are demanded in the complaint; this would amount to an average of $150,000 per member of the class. Assuming that this is plaintiffs' good faith estimate of the maximum amount recoverable, such a sum would be sufficiently substantial to induce any member of the class who believes that he has been damaged to seek a day in court. While some members of the purported class would have claims below the average, there is nothing presently in the record to indicate that any claims are of such a low order of magnitude that it would be unfeasible or uneconomic for the claimant to seek redress.

Furthermore, although this action might be administratively manageable as a class action, the admission of evidence relevant to determining IATA's compliance with the CAB notice requirement with respect to each applicant whose claim is in issue would create unfortunate and unnecessary confusion at trial. Such confusion could lead only to inefficiencies with respect to the time and resources of the court and jury. This is unlike a case where, although conduct by the various claimants may have been different, the basis for recovery is a sin-

gle course of conduct by the defendants. Compare the cases cited at p. 92 supra. Here defendant IATA has conducted itself in a different manner with respect to various claimants.

On the basis of the foregoing the Court cannot find that the common issues of fact and law predominate over questions affecting the individual members of the purported class or that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. For this reason the Court finds pursuant to Rule 23(c) (1) that this action cannot be maintained as a class action and that accordingly those allegations of the complaint which purport to create a class action must be deemed stricken.

It is so ordered.

