MARK AERO, INC., Plaintiff,

v.

TRANS WORLD AIRLINES et al., Defendants.

Civ. A. No. 75CV659–W–3.

United States District Court,
W. D. Missouri, W. D.

Feb. 15, 1976.

Harold L. Fridkin, John R. Cleary, Richard D. Rhyne, Linde, Thomson, Fairchild, Langworthy & Kohn, Kansas City, Mo., for plaintiff.

Alvin D. Shapiro, Sheryl B. Etling, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., for TWA.

Kent E. Whittaker, Terrence Ahern, William D. Calkins, Hillix, Brewer, Hoffhaus, Grier & Whittaker, Kansas City, Mo., for Frontier.

ORDER STAYING ACTION PENDING
   DETERMINATION OF ISSUES BY
   CIVIL AERONAUTICS BOARD AND
   DIRECTING PARTIES TO BRIEF
   DISCOVERY ISSUE

WILLIAM H. BECKER, Chief Judge.

This is an antitrust action under Sections 1 and 2 of the Sherman Act, Sections 1 and 2, Title 15, United States Code, and Missouri antitrust statutes, Sections 416.031(1) and (2), Revised Statutes of Missouri (1974), seeking treble damages. Plaintiff is a charter air taxi operator which for several years has been attempting to establish a scheduled intrastate passenger service between its own terminal at Lambert Field in St. Louis, Missouri, and Kansas City Municipal Airport in Kansas City, Missouri. Defendants Trans World Airlines and Frontier Airlines are air carriers which have operated as such between Lambert Field in St. Louis and Kansas City International Airport in Kansas City, Missouri.

Plaintiff alleges that defendants have engaged in a combination and conspiracy to restrain trade in and to monopolize, and have monopolized, the air carrier service between St. Louis and Kansas City. In

paragraph 14 of the complaint, plaintiff alleges that in furtherance of the alleged combination and conspiracy, defendants:

"(a) Engaged in acts of unfair competition for the purpose and effect of destroying MARK AERO as a competitor and rendering it incapable of competing as an air carrier between Kansas City, Missouri, and St. Louis, Missouri;

"(b) Induced others to make false and misleading statements to the City of Kansas City, Missouri, with the intention that said statements would be relied upon by the City to plaintiff's detriment;

"(c) Induced and coerced the Aviation Department of the City of Kansas City, Missouri, to refuse to make application to the FAA for approval of a Master Security Plan pursuant to FAR 107, (said system to be financed by plaintiff) as requested by plaintiff in its attempt to initiate operations out of Kansas City Municipal Airport;

"(c) Exchanged and acted upon information regarding schedules, fares and other matters in order to disadvantage and injure MARK AERO; and,

"(e) Undertook a Boycott of MARK AERO by measures designed to prevent passengers from cancelled TWA and FRONTIER flights between Kansas City, Missouri and St. Louis, Missouri, from travelling on MARK AERO flights."

Defendants have moved to dismiss the complaint on the alternative grounds that (1) the Civil Aeronautics Board (CAB) has exclusive jurisdiction of the matters raised in the complaint; (2) the CAB has primary jurisdiction of those matters; and (3) the complaint fails to state a claim for relief under the Sherman Act because it does not allege a conspiracy to restrain or monopolize interstate commerce. Defendant Frontier has also moved to strike paragraphs 14(b) and (c) of the complaint on the ground that the allegations thereof cannot constitute a violation of the antitrust laws under *Eastern R. R. Conference v. Noerr Motor Freight,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

Extensive suggestions in support of, and in opposition to, the motions have been filed. Oral argument was heard at a pretrial conference on December 16, 1975. For the reasons stated below, it is concluded that the action should be stayed pending submission of several of the claims to the Civil Aeronautics Board. This disposition renders it unnecessary to consider the interstate commerce and *Noerr* issues at this time.

Defendants' motions to dismiss raise questions concerning the proper role of the courts and the CAB in administering both the Federal Aviation Act of 1958, Section 1301 *et seq.,* Title 49, United States Code, ("Act"), and the antitrust laws. Whether the doctrines of either exclusive or primary jurisdiction are applicable to this action first requires analysis of the powers of the CAB with respect to antitrust problems.

## I. The Act.

Since 1938, the CAB has exercised broad powers to regulate competition among air carriers. *See generally: Pan American Airways v. United States,* 371 U.S. 296, 300–301, 83 S.Ct. 476, 479, 9 L.Ed.2d 325, 330 (1963). Under Section 412(a) of the Act, Section 1382, Title 49, United States Code, air carriers are required to file with the CAB copies of

". . . every contract or agreement . . . affecting air transportation . . . between such air carrier and any other air carrier . . . for pooling or apportioning of earnings, losses, traffic, service, or equipment, or relating to the establishment of transportation rates, fares, charges or classifications, or for preserving and improving safety, economy, and efficiency of operation, or for controlling, regulating, preventing, or otherwise eliminating destructive, oppressive, or wasteful competition, or for regu-

lating stops, schedules, and character of service, or for other cooperative working arrangements."

Under Section 412(b) of the Act, the CAB is required to disapprove by order any agreements filed which are found to be "adverse to the public interest." Persons affected by orders made under Section 412 are "relieved from the operation of the 'antitrust laws'" under Section 414 of the Act, Section 1384, Title 49, United States Code. Finally, under Section 411 of the Act, Section 1381, Title 49, United States Code, the CAB is empowered to

> "investigate and determine whether any air carrier . . . has been or is engaged in unfair or deceptive practices or unfair methods of competition in air transportation or the sale thereof."

If the CAB finds that an air carrier has been engaged in such conduct, it is given power to issue cease and desist orders.

## II. *Exclusive Jurisdiction.*

Defendant Trans World Airlines asserts that the claims alleged in the complaint are within the exclusive jurisdiction of the CAB. However, exclusive jurisdiction is doubtful for the following reasons.

■ First, although the Federal Aviation Act delegates broad authority to the CAB to regulate air carriers, it does not completely displace the antitrust laws. *Hughes Tool Co. v. Trans World Airlines,* 409 U.S. 363, 387, 389, 93 S.Ct. 647, 660, 34 L.Ed.2d 577, 593, 594 (1973).

> "While the Board is empowered to deal with numerous aspects of what are normally thought of as antitrust problems, those expressly entrusted to it encompass only a fraction of the total." *Pan American Airways v. United States, supra,* 371 U.S., at 305, 83 S.Ct., at 482, 9 L.Ed.2d, at 325.

The Supreme Court has expressly noted that "[o]ne of the most conspicuous exceptions would be the combination or agreement between two air carriers involving

trade restraints." *Hughes Tool Co. v. Trans World Airlines, supra,* 409 U.S., at 387, 93 S.Ct., at 661, 34 L.Ed.2d, at 593.

■ Second, the CAB does not have power to award treble damages for past violations of the antitrust laws, the relief sought by plaintiff. *Pan American Airways v. United States, supra,* 371 U.S., at 311, 83 S.Ct., at 485, 9 L.Ed.2d, at 336; *Aloha Airlines, Inc. v. Hawaiian Airlines, Inc.,* 489 F.2d 203, 208 (9th Cir. 1973); *Breen Air Freight, Ltd. v. Air Cargo, Inc.,* 470 F.2d 767 (2nd Cir. 1972); *S.S.W., Inc. v. Air Transport Ass'n of America,* 89 U.S.App. D.C. 237, 191 F.2d 658 (1951).

■ Third, plaintiff does not seek injunctive relief. In *Pan American Airways v. United States, supra,* the Supreme Court recognized that a grant of injunctive relief in an antitrust action alleging acts within the purview of the CAB would create a potential conflict with the CAB's power to immunize agreements from the antitrust laws under Section 414 of the Act, and that the Act entrusted all questions of injunctive relief to the CAB under Section 411. Because no injunctive relief is requested in this action, dismissal is not required.

## III. *Primary Jurisdiction.*

■ The doctrine of primary jurisdiction, more appropriately labelled a doctrine of "priority of jurisdiction,"[1] is concerned with promoting proper relationships between the courts and administrative agencies in administering regulatory statutes. The doctrine applies when a claim is originally cognizable in the courts but enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body. *United States v. Western Pacific Railroad Company,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126, 132 (1956). *See generally:* 3 Davis, *Administrative Law Treatise,* Sections 1901–1909 (1958); Annotation, "The Doctrine of Primary Administrative Juris-

---

1. *Apgar Travel Agency v. International Air Transport Ass'n,* 107 F.Supp. 706, 711 (S.D.N. Y.1952); 3 Davis, Administrative Law Treatise, Section 19.01 (1958).

diction as Defined and Applied By the Supreme Court," 38 L.Ed.2d 796 (1974).

■■■ No fixed formula exists for applying the doctrine of primary jurisdiction: "In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *United States v. Western Pacific Railroad Co., supra.* Those purposes are to obtain uniformity on certain types of administrative questions, and to obtain the expert and specialized knowledge of the agencies involved.

■■ In two recent cases involving treble damage antitrust claims in regulated industries other than air transportation, the Supreme Court has held that when conduct seemingly within the reach of the antitrust laws is also at least arguably protected or prohibited by another regulatory statute enacted by Congress, and adjudication of the dispute is likely to be of "material aid" in resolving crucial issues, the doctrine of primary jurisdiction should be invoked. *Ricci v. Chicago Mercantile Exchange,* 409 U.S. 289, 299–300, 93 S.Ct. 573, 579, 34 L.Ed.2d 525, 534 (1973); *Carnation Co. v. Pacific Westbound Conference,* 383 U.S. 213, 221–222, 86 S.Ct. 781, 786, 15 L.Ed.2d 709 (1966). *See also: Chicago Mercantile Exchange v. Deaktor,* 414 U.S. 113, 94 S.Ct. 466, 38 L.Ed.2d 344 (1973). *Cf.: Pan American Airways v. United States, supra.*

The doctrine has been invoked in several treble damage antitrust actions against air carriers asserting claims within the regulatory competence of the CAB. In *Foremost International Tours v. Qantas Airways, Ltd.,* 525 F.2d 281 (9th Cir. 1975), a wholesaler of tour programs alleged that defendant Qantas, in entering the inclusive tour industry was guilty of an intent to monopolize that industry and an intent to destroy plaintiff as a competitor. The district court entered a preliminary injunction and stayed the action pending consideration of the claim by the CAB. The Ninth Circuit Court of Appeals affirmed issuance of the preliminary injunction and approved the stay because some of the issues in the case dealt with matters within the expertise of the CAB.

In *Price v. Trans World Airlines,* 481 F.2d 844 (9th Cir. 1973), and *Laveson v. Trans World Airlines,* 471 F.2d 76 (3rd Cir. 1972), plaintiffs, airline passengers, alleged that the defendant air carriers had conspired to fix the price charged coach passengers for rental of head sets used in connection with in-flight movies in violation of the Sherman and Clayton Acts. Both the Ninth and Third Circuit Court of Appeals ruled that because the subject matter of the actions fell within the regulatory jurisdiction of the CAB, the primary jurisdiction doctrine should have been applied.

In *S.S.W., Inc. v. Air Transport Ass'n of America, supra,* a nonscheduled interest air carrier alleged that the defendant air carriers and their trade association had combined and conspired to monopolize the airborne commerce of the United States through various actions calculated to destroy the nonscheduled airlines, such as influencing administrative agencies, ticket agencies and supplies to discriminate in favor of defendants and price cutting. The District of Columbia Circuit Court of Appeals invoked the primary jurisdiction doctrine because the Civil Aeronautics Act (predecessor to the Federal Aviation Act of 1958) was found to cover the "dominant facts" alleged in the complaint as constituting a violation of the antitrust laws. *Id.,* at 662. *Accord: Apgar Travel Agency v. International Air Transport Ass'n,* 107 F.Supp. 706 (S.D.N.Y.1952).

Finally, in *Executive Airlines, Inc. v. Air New England, Inc.,* 357 F.Supp. 345 (D.Mass.1973), the doctrine was applied in an action by an air taxi operator against another air taxi operator and an association of small air carriers alleging that defendants conspired to monopolize an air route and drive plaintiff out of business, and in furtherance of that objective had engaged in various unfair trade practices such as price cutting. Because the issues raised

were found to fall within the jurisdiction and special competence of the CAB, prior resort to the CAB was required.[2]

On the other hand, courts have declined to invoke the doctrine when the CAB has already considered the issues raised in the antitrust action, *Aloha Airlines, Inc. v. Hawaiian Airlines, Inc.*, 489 F.2d 203, 211 (9th Cir. 1973), or when the alleged illegal agreement is not "arguably lawful" under the Federal Aviation Act, *Breen Air Freight, Ltd. v. Air Cargo, Inc.*, 470 F.2d 767 (2nd Cir. 1972); *Allied Air Freight, Inc. v. Pan American World Airways, Inc.*, 393 F.2d 441 (2nd Cir. 1968).

■ In this case, plaintiff has alleged that defendants have conspired to monopolize the air carrier service between St. Louis and Kansas City and in furtherance of the conspiracy both "exchanged and *acted upon* information regarding schedules, fares and other matters" and undertook a boycott of plaintiff through measures to prevent passengers on cancelled flights from travelling on plaintiff's airline. Regulation of schedules and fares, and passenger convenience lie at the heart of the CAB's economic regulation of air carriers. The CAB has approved at least several agreements among air carriers dealing generally with the conduct charged in the complaint. Although nothing in the copies of agreements submitted by defendants in connection with their motions expressly immunizes the conduct charged, a sufficient showing has been made that the conduct is "arguably lawful"

to warrant invocation of the primary jurisdiction of the CAB for the following reasons.

First, whether the conduct charged is covered by the approved agreements and immunized from the antitrust laws by the CAB will require construction of the agreements submitted by defendants and possibly others. This task is within the expertise of the CAB in view of the ambiguity of the agreements as applied to the conduct charged. After a CAB construction, the immunity question can be more easily resolved. *Hughes Tool Co. v. Trans World Airlines, supra.*

Second, if it is found by the CAB that the conduct is not within an agreement, the CAB must determine in the first instance (1) whether it has power to immunize retroactively preapproval conduct, and (2) if it determines that such power exists, whether the agreements will be approved. *Laveson v. Trans World Airlines, supra,* at 83.[3]

■ Plaintiff contends that the doctrine of primary jurisdiction does not apply when the allegation is made that defendants acted "with the predatory intent and purpose of eliminating another airline as a competitor." Plaintiff's "Suggestions in Opposition to Defendant Frontier's 'Motion to Dismiss and to Strike' ", p. 2. However, the same allegation did not preclude invocation of the doctrine in *S.S.W., Inc. v. Air Transport Ass'n of America, supra; Executive Airlines, Inc. v. Air New England, Inc., supra;*

---

2. *Cf. Nader v. Allegheny Airlines, Inc.*, 167 U.S. App.D.C. 350, 512 F.2d 527 (1975).

3. In *Carnation Co. v. Pacific Westbound Conference*, 383 U.S. 213, 86 S.Ct. 781, 15 L.Ed.2d 709 (1966), the Supreme Court noted that under the Shipping Act of 1916, the Federal Maritime Commission has no power to validate preapproved implementation of agreements. *See also: United States Navigation Co. v. Cunard Steamship Co.*, 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408 (1932); *Far East Conference v. United States*, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952). However, the Shipping Act expressly provides that " . . . before approval or after disapproval it shall be unlawful to carry out in whole or in part, directly or indi-

rectly, any such agreement. . . . " Section 814, Title 46, United States Code. No comparable provision appears in the Federal Aviation Act of 1958.

Plaintiff's reliance on *Breen Air Freight, Ltd. v. Air Cargo, Inc.*, 470 F.2d 767 (2nd Cir. 1972), is misplaced. In that case, the agreement in question was not between "air carriers" and could not have been immunized by the CAB. The Second Circuit's statement in *Allied Air Freight, Inc. v. Pan American World Airways, Inc.*, 393 F.2d 441, 448 (2nd Cir. 1968), that "[w]ithout CAB approval actions pursuant to an agreement are not immune from the antitrust laws" was made in reliance on *Carnation* which, as noted above, involved a distinguishable statute.

and *Apgar Travel Agency v. International Air Transport Ass'n, supra.*[4]

█ Plaintiff's contention that the doctrine does not apply when only treble damages are requested as relief is not sound.

"The rationale for applying the primary jurisdiction doctrine does not depend upon the particular kind of relief plaintiffs request. Rather, it rests upon a judicial reluctance to hold practices within the scope of an agency's jurisdiction to be antitrust violations and then to act upon such holding by granting relief—damages or injunction—before prior resort to the agency." *Laveson v. Trans World Airlines, supra,* at 83–84.

*See also: Price v. Trans World Airlines, supra.*

IV. *Stay is Required.*

█ Defendants have requested dismissal of the action if the doctrine of primary jurisdiction is found applicable. However, a stay rather than dismissal is the appropriate action pending resort to the CAB when treble damages are sought. *Carnation Co. v. Pacific Westbound Conference, supra; Price v. Trans World Airlines, supra; Laveson v. Trans World Airlines, supra.* See also: *United States v. Michigan National Corp.,* 419 U.S. 1, 95 S.Ct. 10, 42 L.Ed.2d 1, 5 (1974).

V. *Discovery.*

The issue whether, or to what extent, discovery should proceed pending resort to the CAB has not been briefed by the parties. Briefs will be requested prior to a ruling on this point.

For the foregoing reasons, it is therefore

ORDERED that the above-entitled action be, and it is hereby, stayed pending resort by plaintiff to the Civil Aeronautics Board. It is further

ORDERED that the parties be, and they are hereby, directed to file briefs on or before February 23, 1976, on the question whether, or to what extent, discovery should proceed pending action by the Civil Aeronautics Board.

---

4. *But see: Slick Airways v. American Airlines,* 107 F.Supp. 199, 207 (D.N.J.1951).