The STATE OF NEW YORK; and James L. Larocca, Commissioner of the Department of Transportation of the State of New York, Petitioners,

v.

The FEDERAL AVIATION ADMINISTRATION, Respondent.

UNITED STATES of America, Plaintiff-Appellee.

and

Beechcraft East, Inc., Intervenor-Plaintiff,

v.

THE STATE OF NEW YORK; and William Hennessey, as Commissioner of the Department of Transportation of the State of New York, Defendants-Appellants.

Cal. No. 1538, Docket 83–4083.

United States Court of Appeals, Second Circuit.

Argued June 17, 1983.

Decided July 22, 1983.

Barrie L. Goldstein, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of New York, Melvyn R. Leventhal, Deputy First Asst. Atty. Gen. and Judith A. Gordon, Asst. Atty. Gen., New York City, of counsel), for petitioners and defendants-appellants.

Eugene A. Beatty, Atty., Dept. of Justice, Civ. Div., Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., David J. Anderson and R. John Seibert, Attys., Dept. of Justice, Civ. Div., Washington, D.C., on the brief, and Kenneth N. Weinstein, U.S. Dept. of Transp. and Leonard A. Ceruzzi, F.A.A., Washington, D.C., of counsel), for respondent and plaintiff-appellee.

Before VAN GRAAFEILAND, PIERCE and WISDOM,* Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Between 1971 and 1982, the United States conveyed approximately 97 acres of land and made nine financial grants totalling almost $7 million to the Metropolitan Transit Authority (MTA), a New York

---

* Senior Circuit Judge of the Fifth Circuit, sitting by designation.

State public benefit corporation and the owner of Republic Airport in Suffolk County, New York. *See United States v. State of New York,* 552 F.Supp. 255, 258 (N.D.N.Y.1982), *aff'd,* 708 F.2d 92 (2d Cir.1983). These conveyances and grants were made pursuant to a congressionally defined, national airport development policy aimed at meeting the needs of interstate commerce, the postal service, and the national defense. Airport and Airway Development Act of 1970, §§ 2, 3, 84 Stat. 219, *superseded by* Airport and Airway Improvement Act of 1982, Pub.L. No. 97–248, Title V, 96 Stat. 671 (codified at 49 U.S.C. §§ 2201 *et seq.* (West Supp.1983)). Accordingly, as mandated by federal statutes and regulations, they were conditioned by the requirement that the Airport facilities be available "at all times" for use by Government aircraft in common with other aircraft. 552 F.Supp. at 258; see Act of 1970, § 18(5), 84 Stat. 229, *superseded by* 49 U.S.C.A. § 2210(a)(6) (West Supp.1983). The MTA also had to agree that it would at all times have arrangements in effect for operating the Airport's aeronautical facilities whenever required; that it would not dispose of or encumber its title in the Airport property during the period of Government interest; and that, without FAA approval, it would not enter into any transaction that would operate to deprive it of any of the rights and powers necessary to perform any of its contractual covenants. 552 F.Supp. at 258–59; see 14 C.F.R., Part 152, App. D, II.A.10, 22(a), and 32 (1982).

Apparently unhappy with the requirement that the Airport remain open at all times, New York enacted legislation in 1982 which transferred the title of the Airport from MTA to the New York State Department of Transportation, and imposed a curfew between the hours of 11:00 p.m. and 7:00 a.m. *See* N.Y.Transp.Law §§ 400–402 (McKinney Supp.1982–83). The Federal Government's reaction was twofold; it brought this action to have the New York statute invalidated, and it refused to amend MTA's operating certificate or to issue a new one to the Department of Transportation so that the Airport could continue to serve air carriers. *See* 49 U.S.C.A. §§ 1430(a)(8), 1432(a) (West Supp.1983). New York responded with a counterclaim in which it sought injunctive or mandamus relief compelling the amendment or the issuance of a new certificate. It then sought immediate relief by moving for a preliminary injunction. The district court, Miner, J., denied the motion for a preliminary injunction on the ground that, under 49 U.S.C. § 1486(a) (1976), jurisdiction to review FAA orders lay exclusively in the Court of Appeals. The State appeals from the district court's order and, in the alternative, petitions this Court to review in the first instance the challenged FAA orders.

We believe that the district court correctly interpreted § 1486(a). For purposes of review under that section, the term "order" should receive a liberal construction. *Sima Products Corp. v. McLucas,* 612 F.2d 309, 312 (7th Cir.), *cert. denied,* 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980). Moreover, although we have held that only final orders are reviewable, *McManus v. CAB,* 286 F.2d 414, 417 (2d Cir.), *cert. denied,* 366 U.S. 928, 81 S.Ct. 1649, 6 L.Ed.2d 388 (1961), we have also defined as final an order which "imposes an obligation, denies a right, or fixes some legal relationship." *Rombough v. FAA,* 594 F.2d 893, 895–96 n. 4 (2d Cir.1979) (citing *Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.,* 333 U.S. 103, 112–13, 68 S.Ct. 431, 436–37, 92 L.Ed. 568 (1948)). The orders in the instant case meet these qualifications. *See Nevada Airlines, Inc. v. Bond,* 622 F.2d 1017 (9th Cir.1980). The district court did not err in denying appellants' motion because it lacked subject matter jurisdiction. *See Nevada Airlines, Inc. v. Bond, supra; City of Rochester v. Bond,* 603 F.2d 927, 934–38 (D.C.Cir.1979).

In challenging the FAA orders, petitioners argue that the FAA is not empowered to adjudicate whether the Department of Transportation actually is the owner of Republic Airport. We agree. If the FAA had that power, there would have been no need for it to bring the instant action in which it asks the district court to nullify the trans-

fer of title from MTA to the Department of Transportation.

There is no doubt, however, that the United States may attach legally enforceable conditions to its grants of federal assistance, *United States v. Marion County School Dist.,* 625 F.2d 607, 609–11 (5th Cir. 1980), *cert. denied,* 451 U.S. 910, 101 S.Ct. 1980, 68 L.Ed.2d 298 (1981), and the doctrine of estoppel may be relied upon to prevent the disavowal of these conditions upon which the Government in good faith has relied. *See Cox v. BATF,* 571 F.2d 267, 270 (5th Cir.1978); *Palermo v. Warden,* 545 F.2d 286, 295 n. 12 (2d Cir.1976), *cert. denied,* 431 U.S. 911, 97 S.Ct. 2166, 53 L.Ed.2d 221 (1977). Principles of estoppel furnish ample support for the denial of petitioners' applications for certification on the ground that they failed to identify the "legal owner" of Republic Airport in accordance with the provisions of 49 U.S.C. § 1428 and 14 C.F.R. § 139.13(b)(2).

Administrative agencies are not precluded from relying upon the doctrine of estoppel. *Cox v. BATF, supra,* 571 F.2d at 270; *Truck Drivers and Helpers Local No. 728 v. NLRB,* 415 F.2d 986, 988 (D.C.Cir. 1969), *cert. denied,* 397 U.S. 935, 90 S.Ct. 943, 25 L.Ed.2d 115 (1970). Reviewing courts have similar latitude to act on equitable principles and in the public interest. *Public Serv. Comm'n v. FPC,* 516 F.2d 746, 750 (D.C.Cir.1975). Applying the principles of estoppel or the closely allied doctrine of "clean hands", we find nothing arbitrary or capricious in the FAA's resolve to hold the State of New York bound by the terms of the agreements between its creature, the MTA, and the United States, and to refuse, therefore, to treat the Department of Transportation as owner for certification purposes.

We find no merit in petitioner's contention that, inasmuch as the FAA did not question the ability of the Department of Transportation to operate the Airport safely, it had no recourse but to issue the requested certificates. Safe operating conditions are not the sole prerequisite for certification. *See Morton v. Dow,* 525 F.2d 1302, 1307 (10th Cir.1975). The FAA also is required to look to the public interest. 49 U.S.C. §§ 1421(b), 1429(a); 14 C.F.R. § 139.7(a)(1). Public interest, we believe, requires the State of New York to recognize the sanctity of the contracts here at issue, enacted for the benefit of the general public which has a substantial investment in the Airport. Public interest also requires that the United States be able to identify and look to the person or entity with whom it enters into contracts of the kind involved herein, designed as they were to further congressionally defined public policy.

The order of the district court is affirmed.

The petition for review of the FAA's orders is granted and the orders are affirmed.