**GRUENINGER INTERNATIONAL TRAVEL, INC., Plaintiff,**

v.

**AIR TRANSPORT ASSOCIATION OF AMERICA et al., Defendants.**

Civ. A. No. 75–0857.

United States District Court,
District of Columbia,
Civil Division.

Jan. 9, 1976.

J. W. Rosenthal, E. William Henry, and Peter H. Rodgers, Washington, D. C., for plaintiff.

George W. Wise, Philip C. Larson, Hogan & Hartson, Washington, D. C., for defendants.

MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This is an action for treble damages under the antitrust laws in which defendant Air Transport Association of America (ATAA), the industry trade association, the Air Traffic Conference of America (ATC), a constituent body of ATAA, and 20 certified air carriers are charged with conspiracy to restrain and monopolize the air travel business. Defendants have filed a motion for summary judgment on the basic ground that the activities complained of are immune under the antitrust laws because of detailed supervision and control by the Civ-

il Aeronautics Board. The factual background and legal issues are set forth as follows.

On May 19, 1971, plaintiff Grueninger International Travel, Inc., a travel agency, filed an application for approval of locations at Weston and Lexington, Massachusetts, with the Air Traffic Conference, an association approved by the Civil Aeronautics Board (CAB). Approval of the application would allow plaintiff to be listed with the ATC as an approved travel agency and would permit plaintiff to sell airline tickets on a regular basis. On July 14, 1971, the ATC rejected plaintiff's application, and plaintiff alleges that this rejection was in retaliation for its leadership of a trade association of travel agents who were critical of ATC's policies. Plaintiff also alleges that since the rejection was based on reasons not contemplated by the CAB when the CAB approved the ATC's program of selecting travel agents,[1] the exemption from the antitrust laws, provided by the Civil Aeronautics Act, 49 U.S.C. § 1384, should not shield the defendants from the conduct alleged.

The relevant facts, antedating plaintiff's application, show that in September, 1970, Othmar Grueninger, plaintiff's sole shareholder, became a personal creditor of one Peter Grimes, the principal shareholder of three travel agencies in Massachusetts. On December 1, 1970, Grimes defaulted and Grueninger took the business in satisfaction of the note. Simultaneously, Grimes defaulted on its obligation under its sales agency agreement with ATC, and ATC removed Grimes from the approved travel agent list.

When plaintiff, on May 19, 1971, applied for ATC approval of the newly acquired business, it disclosed that two of its employees had also worked for the now defunct Grimes agency. Pursuant to section IV.D.2 of ATC's regulations, this disclosure required that the application be submitted for ATC Agency Committee (Committee) consideration rather than being approved automatically by its executive secretary. On June 28, 1971, plaintiff was notified that its application would be submitted to the Committee at its July 13, 1971 meeting. The notice also stated that the Committee would assume that plaintiff had waived its right to 45 days' notice, unless an objection was raised.

On the opening day of the ATC Committee meeting, an attorney for defendant ATC received an unsolicited letter from the attorney for Grimes which stated that in fact the plaintiff had been in control of the Grimes agency at the time that Grimes defaulted to ATC. This information was presented to the Committee, a vote was taken, and the application understandably was disapproved. On July 30, 1971, plaintiff was advised by letter of the application's disapproval for the reasons (1) the employment of Grimes personnel indicates that the office cannot be relied upon to live up to the sales agency agreement, and (2) because plaintiff was possibly in control of Grimes and may be substantially responsible for its default. Plaintiff subsequently took the decision to arbitration, as per ATC regulation, and on August 10, 1972, was given approval and placed on the agency list.[2]

Even assuming the correctness of plaintiff's allegations of anti-competitive conduct, we hold that the antitrust exemption provided in the statute immunizes the activities challenged herein. This issue is governed generally by *Hughes Tool Co. v. Trans World Airlines,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973), which holds that as long as the

---

1. The predecessor of defendant's present plan of regulation of ticket sales by travel agents was approved by the CAB in 1941. The purpose behind the plan was to protect the public from unqualified or irresponsible travel agents who would otherwise give the air travel industry a bad name. The plan has been modified and monitored throughout the years by the CAB.

2. During the pendency of arbitration, a period of approximately one year, plaintiff was permitted to sell tickets through the envelope-exchange system.

CAB has supervised the activities in controversy, immunity from the antitrust laws will be afforded through 49 U.S.C. § 1384.

In *Hughes,* control of TWA had been acquired by Hughes in contravention of 49 U.S.C. § 1379. Accordingly, the CAB, after investigation of the Hughes/TWA relationship, determined that such relationship was in the public interest, and would be allowed to continue. Later, TWA brought an antitrust suit against Hughes, who argued that CAB involvement provided antitrust immunity. After an extensive review of CAB oversight of the Hughes/TWA relationship, the Supreme Court, speaking through Mr. Justice Douglas, stated that,

> [b]ut where, as here, the CAB authorizes control of an air carrier to be acquired by another person or corporation, and where the CAB specifically authorizes as in the public interest specific transactions between the parent and the subsidiary, *the way in which that control is exercised in those precise situations is under the surveillance of the CAB, not in the hands of those who can invoke the sanctions of the antitrust laws.* (Emphasis supplied) *Hughes Tool Co. v. Trans World Airlines, supra,* at 389, 93 S.Ct. at 662.

In the instant case, the CAB has approved ATC's plan for selection of travel agents. Plaintiff argues that *Hughes* is distinguishable because the CAB there scrutinized virtually every business transaction between Hughes and TWA. Admittedly here the CAB does not review every decision of ATC. However, since 1941, ATC has sent annual reports of its activities to the CAB, and the CAB has required several modifications of the working resolution. As a matter of law, such control and supervision are sufficient to trigger the antitrust immunity of 49 U.S.C. § 1384.

Plaintiff argues additionally that even if antitrust immunity were generally applicable to ATC actions with respect to the selection of travel agents, the particular procedure followed in this case was not approved by the CAB and that therefore any antitrust exemption was either forfeited or did not attach. Plaintiff alleges that it was not given proper 45 days' notice that its case would be presented to the ATC Committee at its semi-annual meeting, that at the meeting its application was treated summarily and that the minutes of the pertinent Committee meeting are either missing or destroyed. This contention is without merit. Similar arguments were advanced in *Hefler v. International Air Transport Association,* ¶ 73,190, 1970 Trade Cases, where the court concluded that,

> [i]t seems to me that plaintiff is seeking **to take advantage of a blunder on** IATA's part . . . in order to obtain judgment by default, so to speak, without regard to the fact that IATA's error in the form of notice did plaintiff no real harm . . . [t]o grant summary judgment here would emphasize form over substance and would enforce only the letter of the CAB's order without regard to its fundamental purpose. At 88, 701.

Likewise here, to permit plaintiff to prosecute an action in derogation of the statutory policy of antitrust immunity merely because of certain relatively minor procedural irregularities would flaunt the intent and purpose of the Civil Aeronautics Act in placing complete jurisdiction and control of air transportation, including air travel agents, in the hands of the CAB.

Accordingly, defendants' motion for summary judgment is granted. An order consistent with the foregoing has been entered this date.