GRUENINGER INTERNATIONAL
TRAVEL, INC., Appellant,

v.

AIR TRANSPORT ASSOCIATION OF
AMERICA et al.

No. 76–1236.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 19, 1977.

Decided Feb. 18, 1977.

Rehearing Denied March 30, 1977.

William W. Taylor, III, Washington, D.C., with whom J. W. Rosenthal and E. William Henry, Washington, D.C., were on the brief, for appellant.

George W. Wise, Washington, D.C., with whom Philip C. Larson and Janet L. McDavid, Washington, D.C., were on the brief, for appellees. George W. Mayo, Jr., Washington, D.C., also entered an appearance for appellees.

Before WRIGHT and TAMM, Circuit Judges, and GESELL,* District Judge.

PER CURIAM:

This is an appeal from an order of the District Court dismissing appellant's antitrust suit on the ground that the allegedly anticompetitive acts of appellees Air Transport Association of America and its constituent Air Traffic Conference (ATC) were exempt from the antitrust laws under Section 414 of the Federal Aviation Act, 49 U.S.C. § 1384 (1970). We affirm, but for reasons somewhat different from those given by the District Court.

The facts of this case are fully reported in the District Court's opinion, *Grueninger International Travel, Inc. v. Air Transport Ass'n of America*, 405 F.Supp. 1241 (D.D.C. 1976). Therefore we sketch only those facts that are particularly relevant here. By agreement among domestic air carriers, no travel agent may receive commissions for the sale of air transportation unless that agent is approved by the ATC. Grounds for approval are generally proof of financial integrity and experience in the air travel field. The complex agreement embodying the details of qualifications and procedures to be followed to gain approval has been filed with, and approved by, the Civil Aeronautics Board (CAB) pursuant to its authority under the Federal Aviation Act.[1]

In this case, appellant became the owner of a Massachusetts travel agency when its previous owner defaulted on an obligation to appellant. Because the Massachusetts agent had similarly defaulted on various obligations owed to domestic carriers, ATC approval was withdrawn contemporaneously with appellant's succession to ownership. When appellant applied for renewed approval, its application was turned down on two grounds. First, the ATC stated that certain employees of appellant had previously been employed in positions with the Massachusetts agent in which they had been "cognizant" of the financial misdeeds of the latter. Second, based on a letter from the Massachusetts agent which arrived at the ATC the very day on which appellant's application was to be considered, the ATC concluded that appellant was at least partially responsible for the Massachusetts agency's default on its obligations to ATC members. Appellant sought arbitration of this denial and was reinstated as an approved agent some 13 months after the ATC's initial decision.

Appellant charges that the ATC's initial refusal was wrongful both because CAB-approved standards were intentionally misapplied in judging appellant's qualifications and because the ATC committed a number of procedural errors which significantly delayed its approval, at great cost to it in terms of lost commissions. We agree with the District Court that Section 414 of the Federal Aviation Act, as construed in *Hughes Tool Co. v. Trans World Airlines*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973), exempts the ATC from the antitrust laws so long as the ATC follows procedures prescribed by the CAB, even if it later turns out that on the merits the ATC has improperly refused to approve an agent.

At the time the CAB promulgated the procedural rules now in effect which govern approval and withdrawal of agent status, it was well aware that abuses had

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a) (1970).

1. Federal Aviation Act § 412, 49 U.S.C. § 1382 (1970).

occurred under the ATC agreement. *See generally ATC Agency Resolution Investigation,* 29 CAB 258 (1959). Rather than disapproving the agreement or the rather vague standards for agency approval set out therein, however, the CAB required instead that the ATC state its reasons for disapproving or withdrawing agent status and that the ATC establish a binding arbitration procedure through which disappointed applicants could challenge the ATC's stated reasons for disapproval. *See id.* at 264. It was the CAB's view that, so long as all prescribed procedures were followed, arbitration would provide an effective remedy against "capricious committee action." *Id.* Since the first part of appellant's complaint alleges no more than capricious or mistaken action by the ATC, appellant's sole remedy for this claim is the arbitration which it has already successfully invoked.

 Contrary to the District Court, however, we do not agree that the *Hughes* case disposes of appellant's contention that the ATC violated procedures mandated by the CAB for processing agency applications. Unlike in *Hughes,* the CAB here has not only approved and supervised the ATC's agency agreement, but it has also acted affirmatively to impose procedural limits on the ATC. *See ATC Agency Resolution Investigation, supra.* Since Section 414 does not grant immunity to the ATC or its member air carriers except to the extent their actions are approved or authorized, its protection plainly does not extend to acts taken in violation of the very procedural safeguards imposed by the CAB to ensure that ATC actions would be taken on approved grounds. *See Lowe v. IATA,* 1975–2 Trade Cas. ¶ 60,668 (S.D.N.Y.1976); *Hefler v. IATA,* 1970 Trade Cas. ¶ 73,190 (S.D.N.Y. 1970); *Caceres v. IATA,* 46 F.R.D. 89 (S.D. N.Y.1969). Moreover, the administration of the ATC agency resolution is an area in which the ATC must turn very square corners since, in the absence of Section 414, the

agreement would be in blatant violation of the antitrust laws [2] and since approval of a travel agency by the ATC is quite literally a "life or death" proposition for the travel agent involved.[3] Nonetheless, ATC violation of CAB-imposed procedural rules is not actionable unless a travel agent is prejudiced thereby. *See, e.g., Hefler v. IATA, supra.* Applying this test in the case before us and construing the record most favorably to appellant, we cannot say that appellant has been prejudiced since it has not suffered any injury over and above that which would have been occasioned if the ATC had limited its actions to those which were undoubtedly proper under the agency agreement.

For the reasons stated above, the judgment of the District Court is

*Affirmed.*

---

**2.** *See, e.g., Lowe v IATA,* 1975–2 Trade Cas. ¶ 60,668, at 67,928–67,929 (S.D. N.Y.1976); *ATC Agency Resolution Investigation,* 29 CAB 258, 264–265 (1959).

**3.** *Id.* at 265.