27 F.3d 9
 In re JURY PLAN OF the EASTERN DISTRICT OF NEW YORK.
 No. 94-8901.
 
 Judicial Council of the Second Circuit.
 June 16, 1994.
 Before NEWMAN, Chief Judge, KEARSE, WINTER, MINER, ALTIMARI, MAHONEY, and WALKER, Circuit Judges; GRIESA, PLATT, CABRANES, TELESCA, McAVOY, and PARKER, Chief District Judges.
 JON O. NEWMAN, Chief Judge:
 
 
 1
 Pending before the Judicial Council of the Second Circuit are two submissions concerning the plan of the Eastern District of New York for the selection of grand and petit jurors. Technically, these submissions are before the Council in its statutory capacity as a "reviewing panel." 28 U.S.C. Sec. 1863(a) (1988). Section 1863(a) provides that "[e]ach United States district court shall devise and place into operation a written plan for random selection of grand and petit jurors that shall be designed to achieve the objectives of sections 1861 and 1862 of this title, and that shall otherwise comply with the provisions of this title." We understand "this title" to refer to Title 28. Section 1863(a) further provides that "[t]he plan shall be placed into operation after approval by a reviewing panel consisting of the members of the judicial council of the circuit and either the chief judge of the district whose plan is being reviewed or such other active district judge of that district as the chief judge of the district may designate."
 
 
 2
 One submission has been sent to the Council by the Honorable Thomas C. Platt, Chief Judge of the District Court for the Eastern District of New York. The other submission has been sent to the Council by Richard Greenberg, Esq. Both submissions arise from the following circumstances.
 
 Background
 
 3
 In 1985, the Board of Judges of the Eastern District ("the Board of Judges") adopted a plan for the random selection of grand and petit jurors ("the 1985 plan") and submitted it to the Council for approval. The 1985 plan provided that (a) a master wheel of jurors to be summoned for jury duty at the Brooklyn seat of court would be selected from all five counties of the Eastern District (Kings, Queens, Richmond, Nassau, and Suffolk), and (b) a master wheel of jurors to be summoned for jury duty in the "Long Island Division" of the Eastern District, consisting of Nassau and Suffolk Counties, would be selected from Nassau and Suffolk Counties. The Council approved the 1985 plan on July 1, 1985.
 
 
 4
 In 1988, the Board of Judges adopted a revised jury selection plan ("the 1988 plan") and submitted it to the Council for approval. The 1988 plan provided that (a) a master wheel of jurors to be summoned for jury duty at the Brooklyn seat of court would be selected from Kings, Queens, and Richmond Counties, and (b) as in the 1985 plan, a master wheel of jurors to be summoned for jury duty in the "Long Island Division" of the Eastern District, consisting of Nassau and Suffolk Counties, would be selected from Nassau and Suffolk Counties. Council approval of the 1988 plan became effective on February 19, 1988.
 
 
 5
 Subsequently, the Board of Judges of the Eastern District voted to defer the implementation of the 1988 plan. Council approval to defer implementation was not sought.
 
 
 6
 In 1993, the Board of Judges adopted a revised jury selection plan ("the 1993 plan") and submitted it to the Council for approval. The 1993 plan amended the 1985 plan in a minor respect, not relevant to the pending submissions. Council approval of the 1993 plan became effective on July 15, 1993.
 
 
 7
 Thus, with respect to the geographical source of names for juries in the Eastern District, the Eastern District has been operating under the geographical provisions of the 1985 plan for nine years.
 
 
 8
 On March 24, 1994, Chief Judge Platt advised the Council that the Board of Judges was concerned that the Council might not have appreciated that its approval of the 1993 plan, with its technical amendment, was essentially a reaffirmation of the 1985 plan and not the 1988 plan, since the deferral of implementation of the 1988 plan had not been brought to the Council's attention. The Board of Judges therefore resubmitted the 1993 plan for Council approval and also sought the Council's approval to defer implementation of the 1988 plan.
 
 
 9
 Prior to Chief Judge Platt's submission, Atty. Greenberg made a submission to the Council that became complete on February 23, 1994. Contending that the selection of jurors from Nassau and Suffolk Counties for both the Brooklyn seat of court and the Long Island Division resulted in an overrepresentation of White residents in the juries of the Eastern District, he asked the Council to invalidate the 1993 plan and to require the Eastern District to put into effect the 1988 plan.
 
 Discussion
 
 10
 Before we may consider the merits of either of the pending submissions, we must examine our role with respect to jury plans to determine the appropriateness of taking any action on the matters before us. The governing statute, 28 U.S.C. Sec. 1863(a), requires the Council, in its capacity as a "reviewing panel," to "examine the plan to ascertain that it complies with the provisions of [Title 28]." This obligation to "ascertain" compliance is more affirmative than our Council obligation with respect to district court rules. As to rules, they "remain in effect unless modified or abrogated" by the Judicial Council. See 28 U.S.C. Sec. 2071(c)(1) (1988). With jury plans, however, we are obliged to determine whether they comply with the provisions of Title 28.
 
 
 11
 Our obligation under section 1863(a) may also be usefully compared to the duty of every judicial council under 28 U.S.C. Sec. 332(d)(1) to "make all necessary and appropriate orders for the effective and expeditious administration of justice within its circuit." Section 332(d)(1) contemplates a broad authority over the administration of justice. Section 1863(a) by contrast contemplates a narrowly focussed inquiry concerning one aspect of judicial administration--the assembling of pools from which juries are chosen.
 
 
 12
 Especially pertinent to the two pending submissions is the structural arrangement created by Congress in conferring compliance authority over jury plans upon a judicial council, acting as a "reviewing panel." The governing statute contemplates that a district court's jury plan will not be put into effect until a council has approved it. Thus, Congress expected that there would not be any litigation concerning a jury plan until after a council had assessed the plan on the merits and satisfied itself that the plan on its face complied with the statute. See H.R.Rep. No. 1076, 90th Cong., 2d Sess. 9, reprinted in 1968 U.S.C.C.A.N. 1792, 1799. Since the Council approved the 1985 plan and is now being asked to approve what is essentially that same plan (with only a minor revision not relevant to the pending challenge), we are placed in the unusual position of considering a plan, the key features of which have been in operation for nine years and which have recently been the subject of litigation in the District Court, see United States v. Garces, 849 F.Supp. 852 (E.D.N.Y.1994) (rejecting challenge to the master wheel for the Long Island Division), and in the Court of Appeals, see United States v. Macchia, No. 94-1074 (2d Cir. Mar. 29, 1994) (dismissing, for lack of final order, appeal challenging pretrial ruling concerning jury selection plan); In re Macchia, No. 94-3033 (2d Cir. May 3, 1994) (denying petition for writ of mandamus to challenge jury selection plan). The congressional objective of correcting plan defects, if there are any, by council review before a plan is put into effect obviously cannot be achieved in the current situation.
 
 
 13
 If the Eastern District were to make a substantive revision of its jury plan and submit it to the Council for approval, we would be obliged to exercise our statutory authority under section 1863(a) and determine whether the revised plan "complies with the provisions" of Title 28. However, that is not what we are now asked to do. Instead, the Eastern District has asked us to reapprove the 1993 plan, which we have already approved. Though we appreciate the candor of the Eastern District in alerting us to the possibility that our prior approval of the 1993 plan was made without realization that the 1993 plan incorporated the geographical provisions of the 1985 plan, we have concluded, as a prudential matter, that we should not take any action on either of the submissions now pending before us, but, instead, leave the issues sought to be raised by these submissions for resolution in the adjudicatory process. Normally, a district court, subject to appellate review, is a more useful forum than a judicial council for framing issues, developing a factual record, and inviting adversary contentions.
 
 
 14
 Two considerations lead us to adopt this course. First, there is no explicit authority in the statute for "reapproval" of a plan previously approved. Exercising such authority would appear to be a superfluous action. Second, the status and validity of the jury selection plan in the Eastern District are currently being litigated in pending criminal cases. The Council's statutory authority contemplates only a pre-clearance authority, intended to afford the Council an opportunity to reject any plan that on its face does not comply with the provisions of Title 28. The statute does not contemplate that once a plan is in operation, the Council will permit itself to be drawn into consideration of challenges to the validity of a jury plan that are normally to be raised in litigation.
 
 
 15
 For these reasons we exercise our discretion not to take any action with respect to the pending submissions from Chief Judge Platt and Atty. Greenberg. We do not rule out the possibility that, even as to jury plans, some action by the Judicial Council might in some circumstances be warranted in the exercise of our authority under section 332(d)(1), but we conclude that the pending matters are better left to resolution in the course of litigation. With respect to the submission from Atty. Greenberg, we decline to act for the additional reason that we do not believe he has standing to obtain approval or disapproval rulings from the Judicial Council, acting as a "review panel" under section 1863(a). The pre-clearance procedure authorized by Congress is to be used only by a district court.
 
 
 16
 Accordingly, the submissions are dismissed, without prejudice to whatever judicial remedies any affected parties may have.