61 F.3d 119
 In re JURY PLAN OF the EASTERN DISTRICT OF NEW YORK.
 No. 95-8902.
Judicial Council of
the Second Circuit.
 July 17, 1995.
 
 Before: NEWMAN, Chief Judge, KEARSE, WINTER, MINER, ALTIMARI, MAHONEY, and WALKER, Circuit Judges; GRIESA, SIFTON, TELESCA, DORSEY, McAVOY, and MURTHA, Chief District Judges.
 Submission of jury plan by the Board of Judges of the Eastern District of New York, requesting approval pursuant to 28 U.S.C. Sec. 1863(a). Jury plan conditionally approved.
 Chief District Judge SIFTON concurs in the result with a separate opinion.
 JON O. NEWMAN, Chief Judge:
 
 
 1
 Pending before the Judicial Council of the Second Circuit is an "Amended Jury Selection Plan for the Eastern District of New York," adopted by a majority vote of the Board of Judges of the Eastern District of New York ("Board of Judges") on March 21, 1995, as modified on May 23, 1995 ("the 1995 plan"). The 1995 plan has been submitted to the Council for approval in the Council's statutory capacity as a "reviewing panel," 28 U.S.C. Sec. 1863(a). The Council is required to "examine the [1995] plan to ascertain that it complies with the provisions of [Title 28]." Id. See In re Jury Plan of the Eastern District of New York, 27 F.3d 9, 10 (2d Cir.Jud.Coun.1994) ("EDNY Jury Plan I ").
 
 Background
 
 2
 In 1985 the Board of Judges adopted a jury selection plan that was approved by the Judicial Council on July 1, 1985 ("the 1985 plan"). The 1985 plan is called a 5-2 plan: jurors summoned for jury duty at the Brooklyn seat of court are selected from all five counties of the Eastern District (Kings, Queens, Richmond, Nassau, and Suffolk), and jurors summoned for jury duty in the "Long Island Division" of the Eastern District, consisting of Nassau and Suffolk Counties, are selected only from Nassau and Suffolk Counties. In 1988, the Board of Judges adopted and the Council approved a revised plan ("the 1988 plan"), the implementation of which was deferred by the Board of Judges. The 1988 plan, which was never placed into operation, would have been a 3-2 plan, selecting jurors for the Brooklyn seat of court from Kings, Queens, and Richmond Counties, and selecting jurors for the Long Island Division from Nassau and Suffolk Counties. The 1985 5-2 plan, with a minor amendment adopted in 1993 and approved by the Council, has been in operation for the past ten years.
 
 
 3
 The 1985 plan has been the subject of some controversy within the Eastern District, and has been the focus of litigation. See, e.g., United States v. Garces, 849 F.Supp. 852 (E.D.N.Y.1994) (rejecting challenge to master wheel for Long Island Division). In 1994, for reasons set forth in EDNY Jury Plan I, 27 F.3d at 10, the Board of Judges resubmitted to the Council the 1985 plan, as modified in 1993, and sought Council approval. The Council, in the exercise of its discretion, declined to take any action with respect to the Board of Judges's 1994 submission. See id. at 11.
 
 
 4
 Thereafter, the Board of Judges created a task force to review the then existing jury plan, study various options, and make recommendations to the Board of Judges. The task force recommended a 4-3 plan, under which jurors for the Brooklyn seat of court would be selected from Kings, Queens, Richmond, and Nassau Counties, and jurors for the Long Island Division would be selected from Queens, Nassau, and Suffolk Counties. The Board of Judges then elected to conduct its own study of alternatives. Ultimately, the Board of Judges, by majority vote, adopted the 5-5 district wide plan now pending before the Council. This plan selects jurors from all five counties for jury duty at all seats of court within the Eastern District. In transmitting the 1995 plan to the Council on March 31, 1995, Chief Judge Charles P. Sifton noted that the Board of Judges will review the plan after it has been in operation for one year.
 
 
 5
 Because of the significant objection to the 5-5 plan expressed by several judges of the Eastern District, the Council afforded judges favoring and opposing the 5-5 plan an opportunity to appear and present their views at a Council meeting on June 9, 1995. Following those presentations and extensive consideration, the Council concluded that, upon issuance of this opinion, the pending plan would be given conditional approval.
 
 Discussion
 
 6
 The pending 5-5 plan has been proposed by the Board of Judges in a commendable effort to meet criticisms of the Eastern District's current jury plan and to provide district wide representation of jurors at each seat of court within the Eastern District. The two-thirds majority of the Eastern District's judges who favor the plan believe that it will broaden juror representation at each seat of court, without encountering undue logistical problems.
 
 
 7
 Objections to the pending 5-5 plan center primarily upon three related concerns. First, it is feared that serious logistical difficulties will be encountered by jurors from Kings and Richmond Counties and portions of Queens County endeavoring to use public transportation to attend seats of court on Long Island at Uniondale in Nassau County and Hauppauge in Suffolk County. This concern arises from the fact that, though convenient commuter train schedules provide for frequent westbound travel from Long Island stations to Brooklyn in the morning and frequent eastbound travel in the opposite direction in the evening, schedules provide for infrequent travel eastbound in the morning from Brooklyn to Long Island and westbound in the evening from Long Island to Brooklyn. The train schedule problem is exacerbated by the time that it is feared will be required for jurors using subways and buses from Kings and Richmond Counties and portions of Queens County to travel between their homes and train stations. Jurors without access to automobiles, it is feared, will have to leave their homes at unusually early hours to attend court and will not arrive home after court until unusually late hours.
 
 
 8
 A second concern is that the logistical problems in traveling eastbound to Long Island courthouses and westbound from these courthouses will cause many jurors to arrive late for court and to request permission to leave early, thereby disrupting normal trial schedules.
 
 
 9
 A third concern is that exemptions granted to avoid the hardship of long travel, early hour departures, and late hour arrivals and to reduce the risk of trial schedule disruptions will result in a jury pool skewed in favor of those owning or having access to automobiles, resulting in unacceptable discriminatory effects.
 
 
 10
 Assessing these concerns obliges us to give initial consideration to the scope of our review and the applicable substantive standards in the exercise of our statutory obligation to determine whether the proposed plan complies with Title 28. As to scope of review, we believe that we are generally to give de novo consideration to whether a proposed plan complies with Title 28, though there may be aspects of a plan that warrant some deference to the considered views of the judges of a district, whose collective knowledge of local circumstances exceeds our own.
 
 
 11
 As to substantive standards, our immediate concern is whether the plan, either facially or in its inevitable operation, violates the statutory prohibition against exclusion of any citizen from jury service "on account of race, color, religion, sex, national origin, or economic status." 28 U.S.C. Sec. 1862. There is no claim that the proposed plan facially contravenes the requirements of section 1862, and we are satisfied that it does not. Concern is raised, however, that the operation of the plan creates the risk that the granting of exemptions, in response to logistical problems, will result in discrimination.
 
 
 12
 In addition to ascertaining compliance with the anti-discrimination requirements of section 1862, a judicial council has an overarching responsibility for "the effective and expeditious administration of justice within its circuit," 28 U.S.C. Sec. 332(d)(1), and is authorized to "make all necessary and appropriate orders" to achieve that objective, id. Though exercise of a council's section 332(d)(1) authority is normally accomplished through the issuance of such necessary and appropriate orders, we believe there is some authority in a council to observe the standard of "effective and expeditious administration of justice" in determining whether a proposed jury plan complies with Title 28, a title that includes section 332. To take an extreme case, a jury plan that specified juror attendance at court only between the hours of 11 a.m. and 2 p.m. would not be compatible with the effective and expeditious administration of justice, notwithstanding the absence of any discriminatory effect. Of course, it would take a rather clear showing that a jury plan, on its face or in operation, interferes with the effective and expeditious administration of justice before disapproval under section 332 standards would be warranted, since local travel logistics and consequent effects on juror convenience are normally matters best confided to the good sense of the district judges. Indeed, we have no occasion in our current assessment of the pending 5-5 plan to consider the scope of a council's ultimate authority under section 332, since any significant demonstration that the proposed plan is incompatible with the effective and expeditious administration of justice in the Eastern District can be expected to prompt remedial action by the Board of Judges.
 
 
 13
 With respect to the pending plan, the issue for our consideration, whether assessed under the particular anti-discrimination standard of section 1862 or the more general standard of section 332, involves different predictions as to how the plan will operate in practice. The EDNY judges who favor the plan believe it will work tolerably well--that logistical problems will occur infrequently or, if occurring more often, will not lead to either trial disruptions or excusal patterns that have discriminatory effects. The EDNY judges opposing the plan believe that it is doomed to failure.
 
 
 14
 Though we recognize that the concerns of the opponents are substantial, we have concluded that the plan does not require our disapproval either because of its facial terms or because of its inevitable operation. At the same time, we have sufficient apprehension about the risks that might well be encountered as the plan is put into operation that we refrain from giving it our unqualified approval. Instead, we have decided to approve the plan conditionally,[1] subject to our observation of the operation of the plan during at least its first year. If the adverse consequences feared by the plan's opponents materialize to a degree that renders the plan violative of statutory standards, we will not hesitate to terminate our conditional approval and disapprove the plan. In all likelihood, such circumstances would become apparent to the Board of Judges before the matter required our intervention.[2] Nevertheless, our conditional approval expressly reserves our authority under section 1863 to disapprove the plan at any time for noncompliance with any provisions of Title 28 if circumstances warrant.
 
 
 15
 To effectuate the oversight authority our conditional approval contemplates, we will also condition our approval on the receipt of periodic reports from the Chief Judge of the Eastern District, at intervals no less frequent than three months, concerning the operation of the 5-5 plan. We will expect these reports to include information, by county, on numbers of jurors summoned, numbers of jurors excused for travel hardship, any discernible group patterns emerging from such excusals, experience of district judges as to the effect of the plan on court schedules, and experience of the jurors as to travel inconvenience. Such reports may also include any steps the Board of Judges has taken to minimize travel inconvenience, such as van or bus pooling arrangements from central locations. The required periodic reports should be furnished to the Circuit Executive for prompt distribution to the Judicial Council. In addition, pertinent information concerning the operation of the 5-5 plan may be submitted to the Circuit Executive by any individuals or groups, including bar associations and community organizations. The Circuit Executive and the Chief Judge will determine which of such citizen communications will be circulated to the Judicial Council, though all such communications will be available for inspection by any member of the Council. The Council expects either to make its approval unconditional or to disapprove the plan one year from the date of this decision, though we reserve the right to extend the period of our conditional approval if circumstances warrant.
 
 
 16
 In giving the proposed plan conditional approval, we acknowledge that we are acting in a way superficially at some variance from the action we took in EDNY Jury Plan I. In that matter, we declined to take any action with respect to a plan already in operation. In this matter, we are reserving the authority to disapprove a plan after it has been placed in operation. However, the circumstances are significantly different. The prior matter concerned a plan that (a) had previously received our unqualified approval, (b) had been in operation for nine years, and (c) was then the subject of pending litigation. In this matter, we are acting at the outset to give only conditional approval, reserving the authority to reject the plan if its operation demonstrates statutory deficiencies.
 
 
 17
 For these reasons, we approve the 1995 plan conditionally, subject to the foregoing opinion. We accord the Board of Judges latitude to defer the effective date of the 1995 plan for up to 60 days from the date of this decision in order to assure adequate planning and implementation.
 
 SIFTON, Chief District Judge, concurring:
 
 18
 I concur in the result set forth in Chief Judge Newman's opinion since the opinion approves the modification of the Eastern District of New York jury plan that was adopted by the Board of Judges of the Eastern District on March 21, 1995, and May 23, 1995. I write separately only to note my disagreement with the opinion's description of the scope of the Council's authority under 28 U.S.C. Sec. 332(d)(1), which as Chief Judge Newman states, "we have no occasion in our current assessment of the pending 5/5 plan to consider." I also do not agree, given the particular structure and language of 28 U.S.C. Sec. 1863, that the statute confers on the Council authority to approve a plan conditionally. Nevertheless, since I am happy to comply with the Council's direction to me as Chief Judge to report periodically on the operation of the modified plan, having been already directed to prepare such reports by the Board of Judges, the disagreement remains academic.
 
 
 
 [1]
 Our authority under section 1863 to approve or reject a jury plan includes the lesser authority to approve a plan conditionally. See, e.g., Connecticut Fund for the Environment v. EPA, 672 F.2d 998, 1006 (2d Cir.1982) ("[T]his Court has held that an agency's power to approve conditionally is inherent in the power to approve or disapprove."), cert. denied, 459 U.S. 1035, 103 S.Ct. 445, 74 L.Ed.2d 601 (1982); McManus v. CAB, 286 F.2d 414, 419 (2d Cir.), cert. denied, 366 U.S. 928, 81 S.Ct. 1649, 6 L.Ed.2d 388 (1961)
 
 
 [2]
 We note that the 1995 plan contains the following provision concerning modification:
 This plan may be modified at any time and shall be modified when this Court is so directed by the Reviewing Panel.
 Modifications of this plan, made at the instance of this Court, shall become effective after approval by the Reviewing Panel, in accordance with the Act.